UNITED STATES of America,
Plaintiff-Appellee,

v.

Gary Dan COPELAND,
Defendant-Appellant.

No. 75–2080.

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1976.

James M. Pape, Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Anna E. Stool, Edward B. McDonough, Jr., U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM and GEWIN, Circuit Judges, and MEHRTENS, District Judge.

MEHRTENS, District Judge:

Appellant was convicted by the district court, sitting without a jury, of possession of a machine gun in violation of 26 U.S.C. § 5845(b) and 26 U.S.C. § 5861(d). The only question to be determined on appeal is whether the issuing magistrate was furnished with sufficient facts to justify the conclusions that an informant was reliable and that probable cause existed to permit issuance of a valid search warrant. The lower court upheld the validity of the warrant after conducting a pretrial hearing on appellant's motion to suppress.

The facts material to the issue on appeal are not disputed. On August 14, 1974, Richard Brooks, a Special Agent for the Bureau of Alcohol, Tobacco and Firearms, received telephone information from Zane Westmoreland, the defendant's father-in-law, that the defendant possessed an "assault rifle."

Agent Brooks had never received information from Mr. Westmoreland before that date and had never met him in person. Agent Brooks knew of the informant, however, as Brooks had, during 1972–1974, investigated the possibility that the informant, a union steward, had been involved in some bombings at a Dow Chemical Plant. That prior investigation of the informant by Agent Brooks had resulted in Brooks forming the opinion that Zane Westmoreland had not been so involved and that he was a good citizen.

On August 16, 1974, Brooks met with Westmoreland, took a written statement from him and proceeded to the office of State District Court Judge Paul Ferguson in Angleton, Texas, to obtain a search warrant for the defendant's premises. Judge Ferguson read the affidavit underlying the search warrant, which was sworn to before him by Agent Brooks.[1] Judge Ferguson also read Westmoreland's written statement, which was not sworn to in his presence but which had been sworn to at an earlier time by Westmoreland before Agent Brooks, who was authorized to administer oaths and receive sworn statements.[2] The

1. The pertinent portion of the affidavit of Agent Brooks reads as follows:

"And that the facts tending to establish the foregoing grounds for issuance of a Search warrant are as follows: that a confidential source personally known to me, and whom has a good reputation in the community which he lives and whom I have reasonable cause to believe is a reliable source of information, stated that he observed Gary Dan Copeland with a machine gun which he took into his residence at 514 N. Avenue A, Freeport, Brazoria County, Texas, on August 14, 1974, at 11:00 p. m."

2. Statement of Zane G. Westmoreland, 504 Catalpa, Angleton, Texas, 849–8363.
Made to Richard Brooks, Special Agent, Bureau of Alcohol, Tobacco, and Firearms, Houston, Texas, at the Angleton Police Department, Angleton, Texas on August 16, 1974 at 11:00 a. m. in the presence of Larry Hatthorn, Lieutenant, Angleton Police Department and Richard Perry, Investigator, Brazoria County Sheriff's Office.

On August 14, 1974, about 11:00 p. m., in company with Robbie Roden and Tonie Gayle Roden, I took Gary Dan Copeland to his home located at 514 N. Avenue A, Freeport, Texas. Gary Copeland is a young man, approximately 26 years of age who married my 15 yr old daughter in Mexico without my consent. At this time I was allowing Gary to see my daughter in my home, with the understanding that he was to straighten his life out. As we arrived at this address in Freeport, he asked us to wait a moment, he had something to show us. He went inside the house and returned with some type of automatic rifle. I turned the lights of the car on, inside, and observed it to be some type of assault rifle, with a banana clip, that held about 20 to 30 rounds. Gary said that the assault rifle was full automatic and my son-in-law Robbie, asked if there was a switch to make it fire single shot and Gary answered, "I really don't know". He unfolded the bayonet on the rifle to show us how it worked. He did not appear to have much knowledge about the gun. I asked him what he would ever do with

warrant was issued. State and federal officers went to the appellant's premises, where they presented the warrant to Copeland. Having seen the warrant, Copeland showed the agents where the assault rifle was located. Agent Brooks subsequently tested the weapon and found that it was capable of fully automatic fire.

In *Aguilar v. Texas*, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), the Supreme Court set forth a two-pronged standard upon which to determine whether an affidavit which includes the tip of an informant is sufficient to establish the probable cause required for the issuance of a search warrant. The magistrate must be informed of the underlying facts and circumstances (1) from which the informant has concluded that the person to be searched is engaged in criminal activities, and (2) from which the affiant has concluded that the informant is credible or his information reliable. *United States v. Hill*, 500 F.2d 315, 318 (5th Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1135, 43 L.Ed.2d 404 (1975); *United States v. Chavez*, 482 F.2d 1268 (5th Cir. 1973).

In the examination of the validity of the warrant, we are mindful that great deference should be accorded a magistrate's determination of probable cause. *United States v. Melancon*, 462 F.2d 82, 89–90 (5th Cir. 1972), citing *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725, 734–736, 4 L.Ed.2d 697 (1960), and *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590–591, 21 L.Ed.2d 637 (1969).

The first standard of the *Aguilar* test is obviously satisfied in this instance since the personal observations of the informant form the basis of his conclusion that Copeland was involved in criminal activity. These personal observations of the informant, Westmoreland, together with the inquiry conducted by Brooks as to the registry of the gun, are reflected on the face of the Brooks affidavit. This affidavit, then, independently fulfills the first requirement of the *Aguilar* test.

However, the sufficiency of the agent's affidavit in establishing the reliability of the informant is somewhat marginal. The details supportive of Westmoreland's reliability, as set out in the Brooks document, may satisfy the second prong of the *Aguilar* standard as interpreted in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We note, on the other hand, that the magistrate, in finding sufficient probable cause to justify the issuance of the search warrant, did so after considering the Brooks affidavit *and* the supplemental affidavit of Westmoreland.

Appellant contends that the issuing magistrate (here, State Judge Ferguson) should not have considered Westmoreland's affidavit since the document was not sworn to before the magistrate. Rule 41(c) of the Federal Rules of Criminal Procedure states:

"A warrant shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant. . . . Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a

---

a piece of equipment like that and he said that if there was ever a nigger uprising, or anything like that, it would come in handy. He claimed that he bought the rifle and paid $300.00. He said that he would like to get rid of it because it was dangerous.

I served in the Marine Corps in 1954–1957 and have some knowledge of military weapons. To the best of my knowledge and experience with military weapons, it is my firm opinion, that this was no ordinary sportsman rifle and I believe it to be a machine gun.

       ZANE G. WESTMORELAND  /s/
       Zane G. Westmoreland

Subscribed and sworn to me this 16th day of August, 1974.

       RICHARD BROOKS  /s/
       Richard Brooks

Wit: _____
Wit: Larry Hattorn_____

court reporter or recording equipment and made part of the affidavit."

This rule is, regrettably, ambiguous on its face. The rule requires that an affidavit for a search warrant be sworn to before the magistrate or judge, yet the clear implication of the additional language in the rule is that an affiant need not even appear at the time the warrant is requested from the magistrate. Indeed, the magistrate *may* require the affiant to appear, but such a requirement is apparently within the discretion of the magistrate or state judge. Arguably, then, an affidavit submitted in support of a search warrant application need not be sworn to before the magistrate, as a magistrate may consider any affidavits and require the appearance and/or testimony of all, some or none of the affiants.

This dilemma may be resolved, at least for our purpose, by consulting the case law interpreting Rule 41(c). The thrust of the rule is to insure that information relied upon to establish probable cause be taken under oath and that this must be shown in the record. See *United States v. Acosta,* 501 F.2d 1330, 1334 (5th Cir. 1974). This procedure preserves the record for purposes of review. Thus, any oral additions to the affidavit must be recorded and made a part of the affidavit. *United States v. Acosta, supra,* 501 F.2d at 1334.

In the case before us, the supplemental affidavit was in writing and sworn to before Agent Brooks, who is authorized to administer oaths and take sworn statements. Perhaps, in accordance with Rule 41(c), the state judge should have required Westmoreland to appear and to restate the extent of his knowledge as to Copeland's illegal possession of a firearm. However, we are not prepared to amend Rule 41(c) by deleting the word "may" and adding the word "shall" as its substitute. The judge exercised his discretion in not requiring the appearance of Westmoreland, and absent any showing that he abused his discretion, there would be no justification for ruling that he acted in error.

■ Considering the affidavit of Brooks with the supporting affidavit of Westmore-

land, then, the reliability of the informant is sufficiently established. In the main affidavit, Brooks indicates that the informant is personally known to him, that the informant has a good reputation in the community, and that the agent has reasonable cause to believe the informant to be a reliable source of information. This alone might adequately establish the reliability of the source. See *United States v. Harris, supra,* 403 U.S. at 575, 91 S.Ct. 2075. In the affidavit involved in *Harris,* an investigator stated that he found the informant to be a "prudent" person and that the informant had "personal knowledge" of the illicit activity. The Supreme Court found that the narration of personal and recent observations of criminal activity by an informant distinguished the affidavit from that found inadequate in *Spinelli, supra,* and concluded that the factual basis for believing the informant contained in the affidavit, when coupled with the affiant's own knowledge of the respondent's background, afforded a basis upon which a magistrate could reasonably issue a warrant. *United States v. Harris, supra,* 403 U.S. at 579–580, 91 S.Ct. 2075.

The supplemental affidavit of Westmoreland further enhances the factual basis of his credibility, as it evidences in considerable detail the personal observations and conversations between the informant, appellant and others on the subject of the machine gun. Unlike the situation in *Harris,* there is no declaration against interest made by the informant. Although Westmoreland was the defendant's father-in-law, he admitted (unnecessarily) in court that he did have an axe to grind with Copeland. This antagonism may explain Westmoreland's motivation in providing the government with the tip, but it does not necessarily lessen his credibility. Any possible reduction in reliability in this respect is more than overcome by the informant's presentation of particular details in his tip.

■ In summary, we find the following three factors which parallel those found in *Harris* and together establish probable

cause for issuance of the search warrant: the informant's statement of firsthand observation, the statement of the agent concerning the trustworthiness of the informant and the detail provided in the informant's tip. See *United v. Hill, supra,* 500 F.2d at 318. Any doubts as to the sufficiency of the Brooks affidavit are resolved upon a consideration of the supplemental affidavit of Westmoreland. Since we have ruled that the magistrate properly took the supporting affidavit into account in his determination of probable cause, we need not make a ruling as to the independent sufficiency of the Brooks affidavit. Accordingly, the judgment of the district court is affirmed.

Affirmed.