UNITED STATES of America,
Plaintiff-Appellee,

v.

Edgar O'Neil CAMPBELL and Henry
Mosley, Defendants-Appellants.

No. 77–5806
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 19, 1978.

Ralph L. Barnett, Gretna, La., for defendants-appellants.

John P. Volz, U. S. Atty., Mary W. Cazalas, Dennis Jude Dannel, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

The defendants, Edgar O'Neil Campbell and Henry Mosley, were convicted in a jury trial of unlawfully transporting in interstate commerce property having a value of more than $5000 in violation of 18 U.S.C. §§ 2314 and 2. As to both defendants, imposition of sentence was suspended and they were placed on supervised probation for a period of five years. The court fined each of them the sum of $10,000.

Before trial, the defendants filed a motion to suppress alleging that their warrantless arrests were without probable cause,

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

that there was sufficient time to obtain a warrant and that exigent circumstances did not exist to allow arrest without one and, finally, that incriminating items were illegally seized at the time of their arrest. After an evidentiary hearing, the magistrate recommended denial of the motion to suppress and, after arguments before the district judge, the motion was denied.

On January 13, 1977, Special Agent Rubrecht of the FBI in Louisiana met with an. identified, nonprofessional informer who advised the agent that defendants, Campbell and Mosley, had offered to sell the informant a quantity of diesel marine engine parts and other marine goods. The defendants showed Ralston Cole, the informant, a U-Haul trailer which contained a number of engine parts identified by Cole as being cylinder heads for a GM series 149 Diesel Engine and several rolls of polypropylene line.

Cole, as a graduate of Annapolis, a professional boat operator and president of a boat company, advised the FBI that he had considerable experience with diesel marine engines which enabled him to identify the engine parts. Campbell, first had told Cole that the engine parts were from a boat he had previously operated but later, upon showing the parts to Cole, admitted the parts were stolen from the Warrior and Gulf Company in Chickasaw, Alabama.

On January 24, 1977, Cole contacted Agent Rubrecht again and advised him that he had heard that the defendants were in town. Cole also revealed that the defendants usually stayed at one of a number of hotels or motels on the Westbank Expressway in New Orleans.

That same day, Agent Rubrecht requested agents to canvass the identified hotels in search of Campbell's vehicle. At 10:30 P.M. on January 24, 1977, agents located Campbell's vehicle parked in the rear of the Rodeway Inn on the Westbank Expressway.

An hour later, Agent Rubrecht obtained Campbell's room number from the motel desk and telephoned him. The man who answered identified himself as Campbell. Rubrecht, of course, did not identify himself as an FBI agent. Rubrecht told Campbell that he was interested in purchasing certain marine engine parts. Campbell responded that these parts and any other diesel engine parts were available or could be obtained. Campbell also indicated he had some polypropylene line and sixteen GM 149 series cylinder heads which he would sell to Rubrecht for $2000, an amount far below market value. Rubrecht told Campbell he wanted the parts that night because he was leaving town but Campbell refused. Campbell said it was too late to do business with a stranger and that he had no automobile. Rubrecht knew this to be untrue because he had already seen Campbell's automobile with a U-Haul trailer attached parked in the rear of the hotel. Rubrecht had also observed that the U-Haul trailer parked behind the motel on January 24 was the same size as the one described by Cole in which Cole had seen the stolen marine engine parts. They then concluded their conversation.

Shortly after telephoning Campbell, Agent Rubrecht and several other agents went to defendants' motel room and, after knocking for several minutes, Campbell opened the door. They identified themselves as FBI agents and placed the defendants under arrest. The defendants were handcuffed, seated upon the bed and advised of their *Miranda* rights. A search of the immediate premises, the motel bedroom, was made and no weapons or stolen items were found. The agents did not search the bathroom.

At the time the agents went to defendants' room, the defendants had apparently been asleep and were, therefore, not totally dressed. Mosley requested his jacket but before it was handed to him, an agent searched it. A piece of paper was found in the pocket which subsequently led to the recovery of the engine parts that Cole had originally seen in defendant's possession.

After securing defendants and the motel room, Agent Rubrecht briefly interviewed Campbell. Rubrecht asked Campbell if he had any objection to a search of the U-Haul trailer attached to his car. Campbell said

"no" and the agents searched the trailer. They were also given permission to search Campbell's car.

In the trailer, Agent Rubrecht found five rolls of polypropylene line with 600 feet per roll which was the same as Cole had described.

18 U.S.C. § 3052 provides, in pertinent part:

> [FBI agents may] make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

■ If Rubrecht's knowledge of the facts and circumstances related to him and corroborated through his personal observation gave him "probable cause" under the Fourth Amendment and reasonable grounds under § 3052 to believe the defendants had committed or were committing an offense against the United States, then the arrest without a warrant was lawful. "Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. [Citation omitted]." *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1964). Clearly the facts and circumstances here justify Rubrecht's belief that he had probable cause and reasonable grounds to believe a crime was being committed.

Contentions that the informant in this case did not meet the previously reliable and trustworthy test under *Aguilar-Spinelli* are without merit. Although Rubrecht had never had dealings with Cole before upon which to base reliability, the informant was not confidential, was unpaid, and his detailed information led the FBI to the point where the FBI could make their own observations of the defendants. This informant is so similar to the one in *United States v. Darensbourg*, 520 F.2d 985 (5th Cir. 1975), that we are bound by its holding that an informant is not intrinsically unreliable just because he has not been proven reliable in the past.[1] Detailed information obtained from a non-professional informant witness, when thereafter confirmed by an officer's personal observations, may support an inference that the informant is reliable.

■ The defendants' next contention is that no exigent circumstances existed which would allow the FBI agents to make this arrest without first obtaining a warrant. The Supreme Court has stated that where "Congress has plainly decided against conditioning warrantless arrest power on proof of exigent circumstances",[2] the Supreme Court also declines to make it a constitutional rule. *United States v. Watson*, 423 U.S. 411, 423, 96 S.Ct. 820, 827, 46 L.Ed.2d 598 (1976). This contention, therefore, is also without merit.

■ Both defendants further argue that the search of Mosley's jacket which produced the piece of paper that led to some of the stolen items was unlawful. We have already found that the defendants were lawfully arrested. The search of Mosley's jacket and seizure of the incriminating piece of paper were clearly proper. The search here did not go "beyond [Mosley's] person and the area from within which he might have

---

1. Although *Darensbourg* involves the acquisition of an arrest warrant based on an affidavit which fails to attest to the informant's reliability, the basic holding that this type of informant need not meet the strict requirements of an informant's reliability under *Aguilar-Spinelli* is applicable in this case. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

2. "Until 1951, 18 U.S.C. § 3052 conditioned the warrantless arrest powers of the agents of the Federal Bureau of Investigation on there being reasonable grounds to believe that the person would escape before a warrant could be obtained. The Act of January 10, 1951, c. 1221, § 1, 64 Stat. 1239, eliminated this condition." *United States v. Watson*, 423 U.S. at 423 n. 13, 96 S.Ct. at 827.

obtained either a weapon or something that could have been used as evidence against him." *Chimel v. California*, 395 U.S. 752, 768, 89 S.Ct. 2034, 2043, 23 L.Ed.2d 2685 (1969).[3]

 Lastly, the defendants assert the search of the U-Haul trailer was unlawful. The record reflects testimony that Campbell gave the FBI permission to search both the trailer and his car and the district court was not clearly erroneous in so finding.

In conclusion, we find the defendants were lawfully arrested and lawfully searched incident to that arrest. The search of the trailer was made with Campbell's consent and, therefore, the seizure of the stolen items was also lawful.

AFFIRMED.

---

**3.** Because we find this search lawful, we find it unnecessary to discuss any question of Campbell's standing to contest the search of Mosley's jacket.

