**UNITED STATES of America, Appellant,**

v.

**Donald Jerry HODGES, Appellee.**

**No. 82–5142.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 11, 1983.

Decided April 7, 1983.

Eric Wm. Ruschky, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., John T. Bannon, Jr., Atty. Gen. for Litigation and Legal Advice, Criminal Division, Dept. of Justice, Washington, D.C., on brief), for appellant.

John F. Hardaway, Asst. Federal Public Defender, Columbia, S.C., for appellee.

Before WINTER, Chief Judge, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

The United States appeals from the pretrial suppression of a sawed-off shotgun seized in the residence of Donald Jerry Hodges. The district court ruled that the seizure of the gun was invalid because it was based upon a warrant issued without probable cause. We reverse the order of suppression.

### I

On July 23, 1981, a federal officer secured a search warrant from a United States magistrate for Hodges's residence. The warrant authorized the officer to search for "a 12 gauge, double barrel, sawed-off shotgun, having a barrel length of less than 18 inches in length."

In support of his application for the warrant, the officer relied on information given to him by two persons.* The first was Lana Long, who phoned the officer on July 16, 1981. She told him that she had been living with Hodges and that on July 15 she saw a sawed-off shotgun in the closet of Hodges's mobile home. She said the shotgun belonged to Hodges and that she had a picture of herself holding it. The officer asked for, and received, the picture. According to his affidavit, it shows a sawed-off double-barreled shotgun. The picture was dated nine months earlier.

The officer also presented information received from an unnamed informant who, he alleged, was "considered to be reliable, and is in good standing in the community." The informant told the officer that he had seen a sawed-off shotgun "lying in the closet, located to the right of the entrance" to Hodges's mobile home. The informant also said that he had seen Hodges with the gun on several occasions.

The officer executed the warrant the day it was issued and seized "one Parker 12 gauge, double-barrel shotgun. No serial number, with a barrel length of approximately 11⅜ inches." Hodges was indicted for possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871.

Hodges moved before trial to suppress the shotgun on the ground that the search warrant was not based upon probable cause. Relying primarily on *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1964), the district court ruled that the officer's affidavit did not give the magistrate a sufficient basis upon which he could determine either the existence of probable cause or the reliability of Long and the unnamed informant. The court discounted Long's information because her relationship with Hodg-

---

* The officer averred:

On July 16, 1981, I received a telephone call from a person who identified herself as Lana Long, and who stated that she was calling from Augusta, Georgia. Ms. Long said that she had previously been living with Donald Hodges in his mobile home located at Route 2, Box 63–B, in Bishopville, South Carolina, and that on Wednesday, July 15, 1981, she saw a sawed-off shotgun in the closet of that residence and that it belonged to Donald Hodges. She further stated that she has seen it there on numerous occasions prior to this and that she had a picture of herself holding the shotgun. I requested that she furnish the picture to ATF Special Agent Jim Cash of the Augusta Post of Duty, who obtained the picture and mailed it to me. I can tell from the picture that the firearm appears to be a 12 gauge, double barrel, sawed-off shotgun, with a barrel length of approximately 12 inches.

This is less than the 18 inches required by Federal and State Laws.

On July 23, 1981, I received a telephone call from a confidential source who stated that they had observed a sawed-off shotgun lying in the closet, located to the right of the entrance to the Donald Hodges mobile home in Bishopville, South Carolina. The informant stated that they had seen it in Hodges's possession on several occasions and that they had seen it in that residence on several occasions. The confidential source is considered to be reliable, and is in good standing in the community and is in a position to know the above.

On July 23, 1981, I caused a search to be made of the National Firearms Registration & Transfer Record in Washington, D.C. and was advised that the firearm was not registered in that record as required by law.

es "reasonably provides a strong motive to speak falsely." The court also noted that the picture of Long with the shotgun, dated as it was nine months earlier, did not prove that Hodges was, at the time of the affidavit, in possession of the shotgun. Finally, the court ruled that the unnamed informant's tip was deficient.

## II

We begin with the proposition, recognized by the district court, that a determination of probable cause by a neutral and detached magistrate is entitled to substantial deference. *See United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). A reviewing court's task is to determine whether or not a "substantial basis" exists for the magistrate's decision. *See United States v. Harris,* 403 U.S. 573, 581, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971). Moreover, "the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner .... [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Ventresca,* 380 U.S. at 109, 85 S.Ct. at 746. Finally, probable cause means only that a "probability, and not a prima facie showing, of criminal activity" need be established. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969).

Hearsay may be a basis for a finding of probable cause. *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960). Nevertheless, before a magistrate can find probable cause on the basis of hearsay, the statement must meet the two requirements set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and subsequent cases. First, the statement must reveal the " 'underlying circumstances' necessary to enable the magistrate independently to judge of the validity of the informant's conclusion" that contraband is present at the place to be searched. *Spinelli,* 393 U.S. at 413, 89 S.Ct. at 587. Second, the reliability of the declarant's information must be demonstrated. This may be accomplished in several ways, including corroboration of the tip by investigation.

## III

Applying these principles to the case at hand, we conclude that Long's information provided a substantial basis for the magistrate's finding of probable cause.

There can be no dispute over the sufficiency of the information that Long relayed to the officer. She had formerly lived with Hodges and was familiar with his residence. She gained her information about the gun through personal observation. Her tip disclosed the likelihood of a federal crime. Although the picture she furnished was nine months old, she unequivocally stated that she had seen the gun the day before she phoned the officer. Thus, the information she gave was not stale.

The veracity prong of the *Aguilar-Spinelli* standard, however, requires much closer scrutiny. Although the record discloses that Hodges and Long separated, we are not persuaded that it is proper to infer a lack of credibility from this fact alone. Even if we accept the inference that Long harbored ill will toward Hodges, her credibility cannot be rejected on this ground. This is demonstrated by *United States v. Copeland,* 538 F.2d 639 (5th Cir.1976). There the informant, who was the defendant's father-in-law, admitted "that he did have an axe to grind with Copeland." 538 F.2d at 642. Nonetheless, the court was not willing to discredit his information solely on that basis. Rather, it ruled that while the "antagonism may explain [the informant's] motivation in providing the government with the tip ... it does not necessarily lessen his credibility." 538 F.2d at 642.

Long's motivation is relevant to the question of veracity, but it is not conclusive. Other parts of her statement must be considered in light of the officer's investigation. One detail of her story was that she had a picture of herself holding the gun. The officer asked for, and received, that

picture. His inquiry tested her credibility. Her response satisfied that test. Proof that Long's statement about the picture was true sufficiently corroborated other particulars of her information and provided an adequate basis for the magistrate's judgment that she was credible.

 Because we find that Long's information was sufficient to justify issuance of the warrant, we need not address the parties' arguments about the unnamed informant.

The judgment of the district court is reversed.

REVERSED.