**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Melvin Lee PHILLIPS, Sr.,**
**Defendant-Appellant.**

**No. 83–3319.**

United States Court of Appeals,
Fifth Circuit.

March 5, 1984.

Ralph E. Tyson, Baton Rouge, La., for defendant-appellant.

Bradley C. Myers, Asst. U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before POLITZ, RANDALL and JOLLY, Circuit Judges.

RANDALL, Circuit Judge:

Defendant-appellant Melvin Phillips appeals his conviction for possessing a firearm in violation of 26 U.S.C. § 5861(d) and 18 U.S.C.App. 1202(a)(1). Phillips contends that the seizure of his gun was invalid because it was based upon a warrant issued without probable cause. We disagree and, for the reasons set forth below, affirm.

### I.

On January 19, 1983, Frances Phillips, wife of the defendant, contacted the Baton Rouge office of the Treasury Department's Bureau of Alcohol, Tobacco and Firearms ("ATF"), regarding her husband's possession of a sawed-off shotgun. Mrs. Phillips gave ATF Agent Jessie Jones the following sworn statement:

> I am 28 years old. I have been married to Melvin Lee Phillips for 12 years. We have four children.
>
> About 3 years ago my husband Melvin was convicted in West Baton Rouge Parish for shooting a man. I was in the court room when Melvin pled guilty. He served six months in jail and was then on parole for about 18 months. He got off of parole in January, 1983.
>
> About 2 years ago, before Melvin went to jail, he brought home a single barrle [sic] shotgun. Then about 16 months ago, after he got out of jail, Melvin took a saw and cut the barrel of this gun off. I was present when he did this. After he cut the gun down, it had a barrel length of about 12″ to 14″ and a length of about 20–24 inches including the barrel and the wooden handle.

During the past 16 months Melvin has kept the shotgun in our apartment most of the time. When it was there, it was either in one of our closets or under my cedar robe. The only time that the gun was not at the house was when Melvin would take it in the car or truck with him. On those occasions, he would some-time leave the gun in the vehicle for two or three days.

On January 3, 1983, while Melvin was arguing with me, he went into our bed room and came back out with the sawed off shotgun. He took the gun outside and shot it. He then came back inside and told me that he was going to shoot me and shoot my brothers if they fooled with him.

On January 15, 1983, Melvin came home and said that he had given a man some money for some drugs and the man had run off with his money. At that time Melvin got his shotgun and said that he was going to find the man who took his money. Melvin took his gun, put it in his Thunder Bird and left. The Thunder Bird is a 1972, charcoal grey with a brown top. He was gone about one hour and then came back home.

On Sunday January 16, 1983, Melvin went out to his car, got the sawed off shotgun and brought it back into the apartment. That was the last time I saw it.

On January 18, 1983, Melvin threatened me again, although he did not show me the gun at that time.

After he left for work, I left home and have not been back.

When Melvin puts his gun in his car, he always puts it in the trunk.

Record Vol. I at 61–63.

After Mrs. Phillips gave her affidavit, Agent Jones checked firearms registration and transfer records and found that no firearms had been registered in the name of Melvin Phillips. The following day, Agent Jones presented his own and Mrs. Phillips' affidavit to a United States magistrate and obtained a search warrant for the Phillips' apartment. ATF agents found a sawed-off shotgun under the cedar robe in the defendant's bedroom. The defendant was arrested and later found guilty of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1976), and possession of a firearm by a convicted felon in violation of 18 U.S.C.app. § 1202(a)(1) (1982).

Before trial, the defendant moved to suppress the shotgun on the ground that the search warrant was not based on probable cause. Before a hearing was held on this motion, Mrs. Phillips informed Agent Jones that she had lied when she told him that her husband owned a sawed-off shotgun. Mrs. Phillips claimed that someone else had brought the gun to the apartment without the defendant's knowledge, and that she had placed the gun where it was found during the search. The government avers that it promptly informed defense counsel of this unsworn statement, although defense counsel insists that he was not informed of Mrs. Phillips' contradictory statement until after the suppression hearing was held.

The defendant's motion to suppress was denied and the shotgun was admitted into evidence at trial. Mrs. Phillips did not testify either at the hearing or at trial, asserting spousal privilege. Following trial, the defendant amended his motion to suppress in light of Mrs. Phillips' later statement, and asked for an evidentiary hearing under the rule of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). His motion was denied 563 F.Supp. 267, and this appeal followed.

## II.

The standard for determining whether probable cause exists to issue a search warrant is if "the magistrate was provided with sufficient reliable information from which he could reasonably conclude that the items sought in the warrant were probably at the location sought to be searched." *United States v. Morris,* 647 F.2d 568 (5th Cir.1981). In reviewing the district court's conclusion that the affidavit established probable cause, "our review is not limited to the 'clearly erroneous' stan-

dard, and we instead may make an independent review of the sufficiency of the affidavit." *United States v. Freeman,* 685 F.2d 942, 948 (5th Cir.1982). The magistrate's determination that probable cause was shown by the affidavit is, however, entitled to great deference. *See United States v. Smith,* 686 F.2d 234, 238 n. 3 (5th Cir.1982); *Freeman,* 685 F.2d at 948; *Doescher v. Estelle,* 666 F.2d 285, 289 (5th Cir.1982).

In *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court articulated a new, more flexible standard for evaluating the facial sufficiency of an affidavit based on a hearsay account of an informant's tip. In so doing, it rejected a rigid application of the two-pronged test earlier established in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Court instructed that affidavits are now to be evaluated in light of the "totality of the circumstances." "The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates,* 103 S.Ct. at 2332 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). No longer do *both* the informant's reliability and the basis of his knowledge have to be set forth, for, as the Court noted, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, *by a strong showing as to the other,* or by some other indicia of reliability." 103 S.Ct. at 2329 (emphasis added).

The defendant does not contend that Mrs. Phillips' statement lacked a sufficient "basis of knowledge" from which she concluded that there was a gun in the apartment.

Instead, he argues that Agent Jones' affidavit contained no information indicating that the informant was reliable and that, even under the more flexible standard enunciated in *Gates,* there lacked probable cause to issue the search warrant. The defendant notes that Agent Jones had never met Mrs. Phillips before she gave her statement, and that he knew nothing about her from any other source. The defendant also points out that Agent Jones made no effort to corroborate any of Mrs. Phillips' story, other than to check if there was a gun registered in the name of Melvin Phillips. Finally, the defendant argues that because his wife had just left home, Agent Jones should have suspected that Mrs. Phillips was acting out of a vengeful motive and thus that she was not credible.

Although an informant's "veracity" and "basis of knowledge" are no longer to be "understood as entirely separate and independent requirements to be rigidly exacted to in every case," they are still "highly relevant" in determining whether probable cause existed. *Gates,* 103 S.Ct. at 2327. Thus, before we assess the defendant's contentions in light of *Gates,* we believe it is instructive to study cases similar to the present one under the two-pronged standard of *Aguilar* and *Spinelli.*

If Agent Jones' affidavit adequately apprised the magistrate of Mrs. Phillips' veracity under the *Aguilar-Spinelli* standard, then, of course, the defendant's challenge fails. On the other hand, even if Agent Jones' affidavit lacks sufficient indicia of Mrs. Phillips' veracity to satisfy the *Aguilar-Spinelli* test; the showing made may be adequate to establish probable cause under *Gates.*

### III.

The *Aguilar-Spinelli* rules can be summarized as follows:

First, an affidavit based on an informer's tip, standing alone, cannot provide probable cause for issuance of a warrant unless the tip includes information that apprises the magistrate of the informant's basis for concluding that the con-

traband is where he claims it is (the "basis of knowledge" prong), *and* the affiant informs the magistrate of his basis for believing that the informant is credible (the "veracity" prong). Second, if a tip fails under either or both of the two prongs, probable cause may yet be established by independent police investigatory work that corroborates the tip to such an extent that it supports "both the inference that the informer was generally trustworthy and that he made his charge on the basis of information obtained in a reliable way."

*Gates, supra,* at 2348 (White, J., concurring) (quoting *Spinelli,* 393 U.S. at 417, 89 S.Ct. at 589 (citations omitted) (emphasis in original). Since the issue in this case involves the informant's "veracity," we shall focus on those cases in which this prong was challenged.

We should note first that in all of the cases we discuss below, the tip came from an identified informant instead of an anonymous tipster as in *Aguilar* and *Spinelli.* We have held, however, that "nothing is added to [law enforcement officials'] affidavits by the naming of the informants. When hearsay affidavits from informants are submitted to a magistrate, the concerns of *Aguilar* must be met if he is to fulfill his constitutional role. The naming of informants places no facts relevant to their trustworthiness before the magistrate." *United States v. Martin,* 615 F.2d 318, 325 n. 9 (5th Cir.1980). Thus, we have subjected hearsay affidavits from named declarants to the same rigors under *Aguilar* as those from confidential sources. *See, e.g., United States v. Barham,* 595 F.2d 231, 244 (5th Cir.1979), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 205 (1981); *Unit-*

ed *States v. Ashley,* 569 F.2d 975 (5th Cir.), *cert. denied,* 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978). *But cf. United States v. Campbell,* 575 F.2d 505 (5th Cir.1978) (identified, unpaid informant who gave detailed information was exempt from informant-credibility prong of *Aguilar* ); *United States v. Darensbourg,* 520 F.2d 985 (5th Cir.1975) (same).[1]

We have held that an affiant can establish the credibility of an informant or the reliability of his information in several ways. The most common method has been for the affiant to allege that the informant has previously given tips that proved to be correct. *See, e.g., United States v. Williams,* 603 F.2d 1168, 1171 (5th Cir.1979), *cert. denied sub nom. Scalf v. United States,* 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980); *United States v. Tucker,* 526 F.2d 279, 281 (5th Cir.), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 203 (1976). But, with a first-time informant as in this case, this method is impossible, and affiants have had to rely on the corroboration exception to the two-pronged test by showing other knowledge within the affiant's knowledge to verify the tip. *See, e.g., United States v. Fooladi,* 703 F.2d 180, 183 (5th Cir.1983); *United States v. Campbell, supra,* at 507.

In the present case, the police failed to corroborate any of Mrs. Phillips' story, other than to confirm that her husband had not registered any firearms in his name. We do not attach much weight to this corroboration because the defendant, a convicted felon, was unlikely to register firearms. If, however, the ATF records check had shown that a gun had been registered by a Melvin Phillips, this would have cast some doubt on Mrs. Phillips' story. None-

---

**1.** There appears to be some dispute in this circuit whether a nonprofessional but identified informant must meet the credibility prong under *Aguilar* and *Spinelli.* For instance, in *United States v. Flynn,* 664 F.2d 1296 (5th Cir.), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982), the court found that the holdings in *Campbell* and *Darensbourg* that "a [nonprofessional] informant need not meet the strict requirements of an informant's reliability under *Aguilar-Spinelli,*" were merely dicta be-

cause the informants in those cases had "given detailed information that law enforcement officials [had] corroborated." *Id.* at 1303 n. 13 (emphasis omitted). Although there was corroboration in *Campbell,* it appears that corroboration was absent in *Darensbourg* where Judge Godbold noted that "[t]he information [the informant] gave police was not corroborated by statements of others." 520 F.2d at 991 (Godbold, J., dissenting).

theless, we find that Mrs. Phillips' credibility cannot be sustained on the basis of prior reliability or independent corroboration.

There is one context in which treatment of the identified informant differs from that of the anonymous tipster. When information is received from an "identified bystander or victim-eyewitness to a crime," we have held that such a non-professional informant's reliability need not be established in the officer's affidavit. *See United States v. Bell,* 457 F.2d 1231, 1238 (5th Cir.1972). The rationale for the victim or bystander exception is that the statements of such eyewitnesses will presumably be based on their own observations and thus are not likely to reflect "idle rumor or irresponsible conjecture." *Id.* at 1238. "Whereas other informants, who are often 'intimately involved with the persons informed upon and with the illegal conduct at hand,' may have personal reasons for giving shaded or otherwise inaccurate information to law enforcement officials, such is not true of bystanders or eyewitness-victims who have no connection with the accused." *United States v. Flynn,* 664 F.2d 1296, 1302–03 (5th Cir.), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982) (quoting *Bell,* 457 F.2d at 1238).

The government asserts that Mrs. Phillips falls into this category because she not only "witnessed" her husband's possession of the shotgun, but also because she was actually threatened with the gun—thus making her a "victim." We agree that because Mrs. Phillips did not participate in the crime, there was no danger that her tip was given to exculpate herself or to curry favor with the police. We also recognize that because Mrs. Phillips allegedly was threatened with the shotgun, she might properly be considered a victim who reported her husband to ATF agents out of fear or duty. Yet we cannot overlook the fact that Mrs. Phillips had recently quarreled with and left her husband, and therefore she does not fit comfortably within the description of an "eyewitness-bystander" who is not "intimately involved with the person[ ] informed on." *See Bell,* 457 F.2d at 1238. As we noted in *United States v. Fooladi, supra,*

" '[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person *in the absence of special circumstances suggesting that such might not be the case.'* " 703 F.2d at 183 (quoting 1 W. LaFave, *Search & Seizure* § 3.4(a), at 592 (1978)) (emphasis added).

We have held on occasion, however, that even if we are somewhat skeptical of an informant's motives, a very detailed tip may satisfy the veracity prong of *Aguilar* and *Spinelli.* In *United States v. Darensbourg, supra,* the informant was not an "eyewitness-bystander," but was someone who was involved with and trusted by the defendant. There, the informant not only gave the police his name and address, but also gave them detailed information about the guns, what robbery they were used in, and where they were located. Despite the fact that this was a first-time informant and that his story had not been corroborated by the police, we held that "such [a] detail[ed statement] may base an inference that the informant gained his information in a reliable way, *Spinelli v. United States,* 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637, 644 (1969), and so satisfy the alternate test under *Aguilar's* second prong . . . ." 520 F.2d at 988 (citations omitted).

In *United States v. Copeland,* 538 F.2d 639 (5th Cir.1976), a case factually similar to the one before us, the defendant's father-in-law reported to ATF agents that the defendant possessed an "assault rifle." *Id.* at 640. Although the defendant's father-in-law admitted that he did have "an axe to grind" with the defendant, we held that "[t]his antagonism may explain [the informant's] motivation in providing the tip, but it does not necessarily lessen his credibility. Any possible reduction in reliability in this respect is more than overcome by the informant's presentation of particular details in his tip." *Id.* at 642. *Copeland,* however, differs from the instant case in that the officer there had previous knowledge of the informant and believed him to be reliable. Agent Jones had no prior dealings with

Mrs. Phillips. Nevertheless, these cases do support the argument that questionable motives for informing can be overcome by detailed tips or statements.[2] Yet some of our prior decisions have rejected a strong "basis of knowledge" as an indication of reliability. For instance, in *United States v. Martin,* 615 F.2d at 325 n. 9, we held that "[t]he fact that the statements from [the informants] are recounted in sufficient detail to satisfy relatively easily the first prong of *Aguilar* in no way bolsters their reliability under the second prong."

Finally, although Mrs. Phillips' estrangement from her husband may have cast doubt on her trustworthiness for purposes of evaluating her affidavit, there is another critical fact in the officer's affidavit from which the magistrate could have concluded that Mrs. Phillips was credible. Mrs. Phillips gave her statement in the form of an affidavit, thus subjecting herself to possible prosecution had she lied. In *Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972), the Supreme Court held that one indication of the informant's reliability was the fact that, "under Connecticut law, the informant

might have been subject to immediate arrest for making a false complaint had [the police officer's] investigation proved the tip incorrect." We believe that this indication of reliability is even stronger in the instant case. While the tipster in *Adams* might not have been aware that he could have been prosecuted for making a false statement, the affidavit Mrs. Phillips signed explicitly provided that she was subject to prosecution for false statements or representations.[3] *See, e.g., United States v. Figueroa,* 720 F.2d 1239 (11th Cir.1983) (informant's veracity established in part because he "was explicitly told that he would be subject to criminal prosecution if he knowingly and willingly gave false information to [agent]"); 1 W. LaFave, *Search and Seizure* § 3.3, at 534 (1978) ("information given to police may be found reliable where the making of a false crime report is a criminal offense ... [provided] informant was aware that such an offense existed...").[4]

■ These cases make it apparent that strong arguments could be made both for and against a finding that the *Aguilar-Spinelli* veracity prong had been satisfied.

---

2. The "motivation" issue arising in a family setting has been handled by the courts in different ways. For instance, in *United States v. Hodges,* 705 F.2d 106 (4th Cir.1983), the defendant's wife informed police that her husband possessed a sawed-off shotgun and showed the police a photograph of the defendant holding the gun. Although the informant had recently separated from the defendant, the court held that "even if we accepted that [the informant] harbored ill will toward [the defendant], her credibility cannot be rejected on this ground," and cited *Copeland,* 705 F.2d at 108. In *United States v. Jackson,* 544 F.2d 407 (9th Cir.1976), the defendant's mother-in-law informed Drug Enforcement Administration agents that the defendant was involved in a pending narcotics purchase. In finding that the informant was credible, the court noted that "'[t]he informant in this case was acquainted with persons involved in violent crimes. She placed herself in danger when she gave the information she did give to the police. A baseless accusation in these circumstances is not likely.'" *Id.* at 411 (quoting *United States v. Wong,* 470 F.2d 129, 131 (9th Cir.1972)).

3. The affidavit Mrs. Phillips signed contained the following provision:

[B]efore making this statement, I have read and I understand the following section from the U.S. Code:

18 U.S.C. § 1001, FALSE OR FRAUDULENT STATEMENTS. Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals a material fact, or makes false, fictitious or fraudulent statements or representation, or makes or uses false writing or document shall be fined not more than $10,000 or imprisoned not more than 5 years, or both.

Record Vol. I at 63.

4. The value of an affidavit from the informant was briefly noted in *United States v. Burke,* 517 F.2d 377, 380 (2d Cir.1975), where the court said "it would have been better if the [police officer's] affidavit had recited how Thompson had come to see and hear what he did and *still better if there had been an affidavit by Thompson himself....*" (Emphasis added.) *See also Hurley v. State,* 446 N.E.2d 1326 (Ind.1983) (fact that informant's statement was given in form of affidavit sufficient to establish credibility).

While Mrs. Phillips did give a sworn statement and was a victim-eyewitness to her husband's misdeeds, her trustworthiness as a bystander or victim is diminished by her possible motives of vengeance. Our duty is, however, to decide this case in light of the standard in *Gates* and, under this standard, we believe there were sufficient indicia of veracity to establish probable cause.

## IV.

In *Gates,* the Court stated that uncertainty regarding the informant's veracity could be compensated for by a "strong showing" of basis of knowledge. We believe that such a "strong showing" has been made in this case. Mrs. Phillips described in explicit detail where her husband lived, her husband's prior criminal record, where the gun could be found, and she claimed that she had seen the defendant in possession of the illegal firearm. It does not appear possible that a stronger showing as to "basis of knowledge" could have been made. And while it may have been desirable to have greater indicia of veracity than that of a sworn statement, Mrs. Phillips' story was not devoid of veracity as would have been the case had there been an anonymous tip. Thus, we conclude that in light of the "totality of the circumstances," there was a "fair probability" that Mrs. Phillips' tip was true. *Gates, supra,* at 2332.

Such a conclusion is supported by the Supreme Court's very words in *Gates.* In explaining how "a deficiency in one [prong] may be compensated for ... by another ..." to establish probable cause, the Court provided the following two examples:

[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary.

Conversely, *even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-*

*hand, entitles his tip to greater weight than might otherwise be the case.*

103 S.Ct. at 2329 (citation omitted) (emphasis added).

We believe that the second scenario described by the Court is applicable to the instant case. Moreover, we believe that a finding of probable cause is warranted here in light of the Supreme Court's admonition in *Gates* that " 'although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " 103 S.Ct. at 2331 n. 10 (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)). This presumption of validity "reflects both a desire to encourage use of the warrant process and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case." *Id.* This goal has application in the instant case. Although the ATF agents might have obtained Mrs. Phillips' consent to search the apartment, we believe that obtaining the search warrant was the wiser course and our result favors this process.

Our finding of probable cause in this case should not be understood to mean that we recommend or endorse omissions in affidavits of the informant's credibility or reliability. In *Gates,* the Court noted that its decisions "have consistently recognized the value of corroboration." 103 S.Ct. at 2334. Here, the record does not reflect that the agents checked to see if the defendant was a convicted felon, or that they checked to see if the Phillips lived at the address given by Mrs. Phillips. Nor does it appear that the agents asked Mrs. Phillips for any identification. Corroboration of such details would have produced a greater indication of Mrs. Phillips' reliability, even though this would not have solved the motivation problem. Thus, as the Eleventh Circuit instructed in *United States v. Sorrells,* 714 F.2d 1522, 1528–29 (11th Cir.1983):

The test in *Aguilar* has served many useful purposes aside from insuring that the constitutional rights of citizens be respected. It has given to law enforcement officers, prosecuting attorneys and the courts a straightforward test for resolving disputes over the issuance of a warrant. We do not view *Gates* as an endorsement of slovenly or careless law enforcement work. Such work will continue to produce problems for the prosecution, the defense and the courts engaged in a case by case analysis rather than a repair to certain and definite rules. The Court in *Gates* stated that *Aguilar* has provided guidance in determining the existence of probable cause and it is not anticipated that departure from these guidelines will be looked upon with favor.

## V.

■ The defendant also contends that the district court's decision not to hold a hearing regarding the truthfulness of Agent Jones' statements in his affidavit supporting the search warrant conflicts with the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks,* the Court set forth the procedures under which criminal defendants may challenge the truth of statements made by law enforcement officials in facially sufficient affidavits supporting the issuance of search warrants. The Court held that a hearing on the veracity of the officer's affidavit is required if the defendant makes a "substantial preliminary showing that [the officer made] a false statement knowingly and intentionally, or with reckless disregard for the truth," and that such false statement was "necessary to the finding of probable cause." 438 U.S. at 156–57, 98 S.Ct. at 2676.

The defendant does not suggest that the fact that Mrs. Phillips may have lied to Agent Jones when giving her initial statement is sufficient to require a *Franks* hearing. *See Colorado v. Nunez,* —— U.S. ——, 104 S.Ct. 1257, 79 L.Ed.2d 338 (1984) (under

*Franks* "the deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant ... not of any nongovernmental informant"); *United States v. Arrington,* 618 F.2d 1119, 1125 (5th Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 876, 66 L.Ed.2d 812 (1981) ("proof that informant's information was false would not have vitiated probable cause for the warrant"). The defendant argues, however, that the government's withholding of Mrs. Phillips' contradictory statement until the suppression hearing was over evinced sufficient bad faith to require that a hearing should have been held to determine whether Agent Jones' statements in support of the warrant were false. The government contends that defense counsel was promptly informed of Mrs. Phillips' contradictory statement prior to the suppression hearing, although written notice of this statement was not provided to defense counsel until after the hearing was held.

*Franks v. Delaware* requires the defendant to make a "substantial showing" that Agent Jones repeated Mrs. Phillips' tip with knowledge that it was false or with reckless disregard for the truth. Nothing in the record casts any doubt on the veracity or reliability of Agent Jones. The defendant has merely made an unsubstantiated claim that he did not receive word from the United States Attorney's office about Mrs. Phillips' contradictory statement until the suppression hearing was held, and that the government intentionally withheld this information until then. This conclusionary allegation does not impugn the integrity of ATF Agent Jones. We agree with the district court that no *Franks* hearing was required in this instance.

Thus, the judgment of the district court is AFFIRMED.