UNITED STATES of America, Appellee,

v.

**Larry WYDER, Appellant.**

UNITED STATES of America, Appellee,

v.

**Sherman Burton MALLORY, Appellant.**

Nos. 81–5083, 81–5106.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 9, 1981.

Decided March 10, 1982.

Certiorari Denied June 14, 1982.
See 102 S.Ct. 2945.

---

Howard L. Cardin, Baltimore, Md. (Cardin & Gitomer, P.A., Baltimore, Md., on brief), for appellant Sherman Burton Mallory.

Patrick J. Christmas, Washington, D. C. (Christmas & Hamlin, P.C., Washington, D. C., on brief), for appellant Larry Wyder.

Price O. Gielen, Asst. U.S. Atty., Baltimore, Md. (Russell T. Baker, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

WINTER, Chief Judge:

These are appeals by two defendants convicted of conspiracy to distribute heroin, a violation of 21 U.S.C. § 846, and interstate travel with intent to distribute heroin, a violation of 18 U.S.C. § 1952. Defendant Larry Wyder contends that the district court erred by overruling his motion to suppress evidence obtained in a search of his home. Defendant Sherman Mallory contends that the district court erred by overruling his motion to suppress evidence obtained through a wiretap of his telephone. We affirm.

## I.

The warrant authorizing the search of Wyder's home was executed by a United States magistrate on August 29, 1980. The warrant commanded that the search be conducted within five *days*. The search was conducted the next day, and the original warrant was returned to the magistrate and placed in the district court's records. The copy that was given to Wyder when the search was conducted had erroneously and inadvertently been filled out so that it commanded that the search be conducted within five *hours*.

Wyder argues that if his home was searched pursuant to the copy of the warrant that he received, the search was invalid because the five-hour time limit had expired, and that if his home was searched pursuant to the warrant that was returned to the magistrate, the search was invalid

because he was given an inaccurate copy of the warrant in violation of Rule 41, Fed.R. Crim.P. The government contends that the second half of Wyder's argument is faulty. The inadvertent mistake in the copy, according to the government, did not render the search invalid. We agree.

■ The relevant portion of Rule 41 is as follows:

> The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken.

Fed.R.Crim.P. 41(d) (first sentence). Evidence must be suppressed if obtained in a search rendered invalid by a failure to conform with Rule 41. *See, e.g., United States v. Haywood,* 464 F.2d 756, 760 (D.C.Cir. 1972) (dictum); *Navarro v. United States,* 400 F.2d 315, 319 (5 Cir. 1968). Courts have frequently held, however, that not all violations of Rule 41(d) render a search invalid. "Ministerial" violations of Rule 41(d), it has been held, require suppression of evidence only if the defendant can demonstrate that he was prejudiced by the violation. *See, e.g., United States v. Dudek,* 530 F.2d 684, 688 (6 Cir. 1976) (defective return; unverified inventory); *United States v. Hall,* 505 F.2d 961, 964 (3 Cir. 1974) (defective return); *United States v. Harrington,* 504 F.2d 130, 134 (7 Cir. 1974) (failure to give defendant a copy of the warrant and a receipt); *United States v. Kennedy,* 457 F.2d 63, 67 (10 Cir.) (defective return), *cert. denied,* 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972); *United States v. Moore,* 452 F.2d 569, 572–73 (6 Cir. 1971) (defective inventory), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972); *United States v. Wilson,* 451 F.2d 209, 214 (5 Cir. 1971) (no return), *cert. denied sub nom. Fairman v. United States,* 405 U.S. 1032, 92 S.Ct. 1298, 31 L.Ed.2d 490 (1972); *United States v. McKenzie,* 446 F.2d 949, 954 (6 Cir. 1971) (copy of warrant given a day late); *United States v. Haskins,* 345 F.2d 111, 117 (6 Cir. 1965) (defective return); *Evans v.*

*United States,* 242 F.2d 534, 536 (6 Cir.) (per curiam) (defective return), *cert. denied,* 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957). At least two circuits have indicated that *all* violations of Rule 41(d) are ministerial. *See United States v. Hall, supra* (Third Circuit); *United States v. McKenzie, supra* (Sixth Circuit). And the Second Circuit has stated that a violation of *any* provision of Rule 41 will lead to suppression of evidence only upon a showing of prejudice to the defendant or of intentional and deliberate disregard of the rule by the government. *See United States v. Burke,* 517 F.2d 377, 386–87 (2 Cir. 1975).

We endorse the doctrine that ministerial violations of Rule 41(d) require suppression only if the defendant can demonstrate that he was prejudiced by the violation. We express no view on the more sweeping rules announced in *Hall, McKenzie,* and *Burke,* however, because we think that in any event, the violation in the present case was ministerial. Since Wyder did not, and could not, demonstrate that he was prejudiced thereby, we conclude that the district court was correct in overruling Wyder's motion to suppress.

## II.

■ The order authorizing the wiretap of Mallory's telephone was issued by a federal district judge in April, 1980. Attached to the application for the order was an authorization from Philip Heymann, Assistant Attorney General in charge of the Criminal Division. Also attached was a copy of an order dated August 15, 1978, and signed by then Attorney General Griffin Bell. This order specially designated the Assistant Attorneys General in charge of the Criminal Division, the Tax Division, and the Office of Legal Counsel as officials empowered to authorize applications for wiretap orders under 18 U.S.C. § 2516. In August, 1979, Benjamin Civiletti succeeded Griffin Bell as Attorney General. No new § 2516 order was issued, nor was the 1978 order revoked.

Mallory argues that the wiretap of his telephone was invalid because § 2516 required that the application for the wiretap

order be authorized by an official specially designated to do so in an order signed by Attorney General *Civiletti.* The government argues that Attorney General Civiletti's continued reliance on the order signed by Attorney General Bell was enough to satisfy § 2516. We agree.

■ We begin by noting that the defendant's assertion would be frivolous in the standard administrative setting. The acts of administrative officials continue in effect after the end of their tenures until revoked or altered by their successors in office. Any other general rule would impose an undue burden on the administrative process.

The question, then, is whether the scheme set up in § 2516 represents an exception to the general rule. The statute states:

> The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for ... [a wiretap].

18 U.S.C. § 2516(1) (1976). In *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the Supreme Court held that Congress meant what it said when it mentioned only the Attorney General and Assistant Attorneys General in § 2516(1). The Court held that the Executive Assistant to the Attorney General could not authorize applications for wiretaps, even though the Attorney General wanted him to exercise this responsibility. The purpose of § 2516(1), the Court declared, was to limit the power to authorize wiretaps "to those responsive to the political process, a category to which the Executive Assistant to the Attorney General obviously does not belong." 416 U.S. at 520, 94 S.Ct. at 1829. Defendant Mallory argues that that purpose was not achieved in his case because there was no special designation bearing Attorney General Civiletti's signature.

The first flaw in the defendant's argument is that he incorrectly identifies the special designation as the foundation for the political accountability of the Assistant Attorneys General. In truth, the Court identified the fact that the Assistant Attor-

neys General were appointed by the President with the advice and consent of the Senate as the foundation for their political accountability. *See id.* at 520 n.9, 94 S.Ct. at 1829 n.9. Indeed, if delegation from the Attorney General is the touchstone for political accountability, *Giordano* may well have been decided differently.

The more significant flaw in the defendant's argument is that the signature on the written designation has next to nothing to do with the nature of the delegation. The defendant cannot rationally maintain that Assistant Attorney General Heymann was exercising his authority without the knowledge and consent of Attorney General Civiletti. The fact that Attorney General Civiletti relied on the old designation, as we hold that it was proper for him to do, instead of signing a new one simply does not implicate the concerns behind the statute. We can see no basis for holding that § 2516(1) represents a deviation from the usual rule that administrative orders ordinarily remain in effect beyond the tenure of the individual who issued them. If the language of § 2516(1), read literally, is thought to indicate otherwise, we note that the Supreme Court has declined to suppress evidence where the government failed to follow the literal language of the wiretap statute but no violation of consequence occurred, *see United States v. Chavez,* 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) (decided the same day as *Giordano*) (§§ 2518(1)(a) & (4)(d) were violated in that the wrong official was identified as the one who had authorized the application; no suppression of evidence was necessary where the official who actually authorized the application was empowered to do so). We conclude that the district court was correct in overruling Mallory's motion to suppress.

AFFIRMED.