In re **MOTION TO QUASH GRAND JURY SUBPOENAS (Regional Consulting Services for Economic and Community Development, Inc.)**

**Misc. No. 83–00005–BL.**

United States District Court,
S.D. West Virginia,
Bluefield Division.

Aug. 22, 1984.

Michael W. Carey, Asst. U.S. Atty., Charleston, W.Va., for plaintiff.

Edwin B. Wiley, Sanders & Wiley, Bluefield, W.Va., for defendant Regional Consulting Services.

Stephen B. Goad, Princeton, W.Va., for defendant Region I Planning and Development Council.

Robert B. King, King, Betts & Allen, Charleston, W.Va., for defendant Michael B. Jacobs, Executive Director of Region I Planning and Development Council and Project Director of Regional Consulting Services for Economic and Community Development, Inc.

## MEMORANDUM OPINION
## AND ORDER

HADEN, Chief Judge.

■ Michael B. Jacobs, individually and as Executive Director of Region I Planning and Development Council and Project Director of Regional Consulting Services for Economic and Community Development, Inc., moves this Court, pursuant to *Rule* 41(e) of the Federal Rules of Criminal Procedure.[1]

The Movants challenge the search warrant on seven grounds, four of which relate to its issuance and three concerning its execution:

1. The warrant was issued without probable cause;

2. The warrant failed to adequately describe the premises to be searched;

3. The warrant did not adequately describe the property to be seized;

4. The warrant did not allege that the property sought is evidence of a crime;

5. The warrant was void when the searches and seizures were conducted on August 13, 1983;

6. The property seized was not described in the warrant and the warrant was not properly executed; and

7. The return of the warrant was improperly made.

For the reasons discussed below, the Court concludes that the search warrant was properly issued and executed and therefore denies Movants' motion to suppress.

### I. *Background*

On August 2 and 3, the United States Attorney for the Southern District of West Virginia issued on behalf of a sitting grand jury three subpoenas duces tecum requiring Regional Consulting Services for Economic and Community Development, Inc., Region I Administrative Services/Michael B. Jacobs, Executive Director and Region I Planning and Development Council to produce certain records at the United States Attorney's Office on August 23, 1983. The subpoena to Regional Consulting Services requested the following documents:

---

1. *Rule* 41(e) provides:
"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial before an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12."
Because the Court is not called upon to resolve any issue of fact herein, the Court has deemed it unnecessary to conduct a hearing or receive evidence preparatory to addressing movants' contentions respecting the challenged search warrant. *Cf., Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) *with U.S. v. Phillips,* 727 F.2d 392 (5th Cir.1984).

"All records and documents relative to all Federal and State Grants, including corporate charts, corporate minutes, monthly checking and savings account statements, signature cards, original checks, loans, loan applications, financial statements, all ledger books, and travel and entertainment expenses and receipts from January 1, 1981, to date. Also, this is to include Certificate of Deposits."

The records subpoenaed from Region I Administrative Services were identical to those subpoenaed from Regional Consulting Services except the time period was enlarged to include documents from January, 1978, to the date of the subpoena.

The third subpoena, to Region I Planning and Development Council, required production of the same documents as the subpoena to Region I Administrative Services described in the preceding paragraph.

After receiving the subpoenas Attorney Edwin B. Wiley, counsel for Regional Consulting Services and Region I, notified this Court and the United States Attorney on August 10, 1983, that he would file a motion to quash the subpoenas. He did so on August 11, 1983, and the matter was set down for a hearing before this Court on August 15, 1983.

According to the Government's memorandum of law in opposition to the Movants' instant motion, the following events (which are not disputed by Movants) transpired before the scheduled hearing could be held on the motion to quash the subpoenas:

"Corporal Gary Slater, of the West Virginia State Police, learned that certain documents called for in the subpoenas duces tecum had been thrown into the trash containers behind the Region I offices in Princeton, West Virginia. [Corporal Slater's affidavit to this effect was attached to the Government's memorandum]. On August 11, 1983, at approximately 6:30 p.m., Slater personally removed various plastic trash bags containing documents called for in the subpoenas duces tecum from the Region I trash containers, and on Friday, August 12, 1983, Slater contacted William Pauer, Postal Inspector, at approximately 2:00 p.m. to advise him what he (Slater) had discovered. Thereafter, at approximately 2:30, Slater and Pauer met at the United States Attorney's Office where Pauer personally viewed the items contained in the trash bags and determined that certain items were in fact called for in the subpoenas duces tecum. They then met with Richard S. Glaser, Jr., [an Assistant United States Attorney].

At this time, it was determined that a search warrant should be obtained to search for evidence relevant to the possible commission of obstruction of justice by persons associated with Region I and RCS. Initially, the 'Affidavit for Search Warrant' was drafted for the signature of Corporal Slater, in that he had personal knowledge as to the destruction of records called for by the subpoenas duces tecum. Corporal Slater, however, left the United States Attorney's Office to attend to certain personal matters in anticipation of traveling to Princeton, West Virginia, to execute the search warrants.

Glaser, uncertain whether Slater would return in time to sign the affidavit, then substituted Pauer as the affiant. At approximately 4:45 p.m. Pauer, Glaser and Slater [2] appeared before Magistrate Jerry D. Hogg where Pauer was sworn and executed the affidavit. Magistrate Hogg issued the search warrant at approximately 4:55 p.m.

Shortly after the issuance of the search warrant, Pauer and Slater left Charleston and proceeded to Princeton, West Virginia, to execute the warrant. Postal Inspectors Anthony J. Crawford and Anthony Cannarella, who were in Charleston, were directed by Pauer to go to Hinton, West Virginia, to execute the search at that location. Postal Inspec-

2. Slater had returned to the United States Attorney's Office in time to go with Glaser and Pauer when they appeared before Magistrate Hogg.

tors E.D. Matyas and Richard L. Dent, also stationed in Charleston, West Virginia, were directed to go to Welch, West Virginia, to execute the search at that location. Once they arrived at their respective locations, both groups had been instructed to contact Pauer at the State Police Barracks in Princeton prior to proceeding with the search. Pauer and Slater arrived in Princeton at approximately 8:00 p.m. at which time no one could be observed in the Region I office in Princeton. Accordingly, Pauer determined not to execute the searches until the next day when entry into the various premises could be made without causing any damage. At this time, Pauer was not aware that the day's date, that is August 12, 1983, had been placed on the search warrant as the date that the search must be made and was operating under the impression that he had ten days from the issuance of the warrant to conduct the search. The other Postal Inspectors were advised to call Pauer the next morning.[3]

The warrant was executed on August 13, 1983, at four of the five offices of Region I named in the search warrant.[4] Pauer's decision to wait until August 13 to conduct the searches, and thus avoid property damages to the target offices, proved productive on the day of the searches when employees with keys to each of the offices were located. With access to the offices obtained without incident, searches were conducted and documents seized at each of the five offices listed in the search warrant.

A. ISSUANCE OF THE SEARCH WARRANT. In this section, the Court will discuss the four grounds advanced by Movants which challenge the *issuance* of the search warrant.

1. *Probable Cause Existed for the Issuance of the Search Warrant.* Movants'

contention that probable cause did not exist for the issuance of the search warrant is not well taken. *Rule* 41(c)(1) provides, in pertinent part, as follows:

"A warrant ... shall issue only on an affidavit or affidavits sworn to before the federal magistrate ... and establishing the grounds for issuing the warrant. If the federal magistrate ... is satisfied that grounds for the application exist or that there is probable cause to believe that they · exist, he shall issue a warrant identifying the property to be seized and naming or describing the ... place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part."

Pauer's affidavit alleged the following grounds in support of the request for the search warrant:

"That Michael Jacobs on or about August 9 and 11, 1983, did corruptly influence, obstruct and impede, the due administration of justice in that he attempted to conceal, alter and destroy documentary evidence subject to and under a subpoena duces tecum of the Grand Jury of this Court at Charleston, Kanawha County, West Virginia, which documentary evidence was material to investigations then and there pending before the Grand Jury; in violation of Title 18, United States Code, Section 1503."

The affidavit also alleged "the following facts establishing the foregoing grounds for issuance of the Search Warrant":

"That Michael B. Jacobs on or about August 9 and 11, 1983, did attempt to destroy certain documentary evidence as described above by placing it in garbage cans located in an alley located behind the offices of Region I Planning and Development Council, East River Office Building, 1336 Mercer Street, Princeton, West Virginia, which garbage cans would be emptied of their contents by

---

**3.** *See* Government's memorandum of law at pp. 2–4. The Movants do not dispute any of the factual recitations contained in the affidavits submitted by Pauer, Slater and Glaser which support the facts quoted in the text.

**4.** The five offices and the cities in which each were located are listed *infra* at p. 190. For reasons not appearing in the record, the offices in Union, West Virginia were not searched.

the City of Princeton and such contents burned and destroyed at the Mercer County landfill."

Pauer's affidavit obviously satisfied Magistrate Hogg that probable cause existed to believe the subpoenaed documents were being destroyed and justice obstructed in violation of 18 U.S.C. § 1503 as evinced by his issuance of the search warrant. This "determination of probable cause by a neutral and detached magistrate is entitled to substantial deference." *U.S. v. Hodges*, 705 F.2d 106, 108 (4th Cir.1983) *citing U.S. v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Probable cause simply means that a "probability, and not a prima facie showing, of criminal activity" be established. *U.S. v. Hodges*, 705 F.2d at 108 *quoting Spinelli v. U.S.*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969).

Based upon the allegation in the affidavit that subpoenaed documents were found in garbage cans behind Region I's office in Princeton, there certainly was sufficient evidence before Magistrate Hogg to support the conclusion that there existed a "probability" that criminal activity was taking place—specifically, the destruction of subpoenaed documents. The Movants' assertion that the "affidavit contains no specific facts or circumstances to support the agent's conclusions" [5] is factually incorrect. As quoted above, the affidavit *did* recite the factual basis for requesting the search warrant. The fact that the subpoenaed documents were found in a location where they would be destroyed provided the Magistrate with a reasonable basis to find probable cause of criminal activity. The fact that not all of the underlying information concerning the discarded documents was within Pauer's personal knowledge is of no moment. Hearsay evidence may properly constitute the basis for a finding of probable cause. *Jones v. U.S.*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); *U.S. v. Hodges*, 705 F.2d 106, 108 (4th Cir.1983).

5. *See* Movants' memorandum of law at p. 16.

Finally, the Court cannot agree with Movants' argument that the affidavit speaks only to the existence of probable cause to search the Princeton office, where the disgarded documents were found and, therefore, cannot serve to support a finding of probable cause to search the offices in the other four cities named in the search warrant. To give credence to Movants' argument would require this Court to construe the affidavit in the precise manner which the Supreme Court has counselled against:

> "[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of the probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

*U.S. v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Inasmuch as common sense commends, if not compels, the inference that the person or persons responsible for destroying subpoenaed documents in one city where an organization's office is located is likely to destroy similar and related documents in other locations, including other offices of the organization in nearby cities, this Court is of the opinion that Magistrate Hogg had sufficient information before him to conclude probable cause existed to search the offices in each of the five cities named in the search warrant.

2. *The Search Warrant Adequately Described the Premises to be Searched.* Movants contend that the search warrant is invalid because the places to be searched were only generally described and "the executing officers could not have possibly known which house or building they were

to search much less which floor, room or office." [6]

■■■ The search warrant described the premises to be searched as follows:

"Region I Planning & Development Council: East River Office Bldg., 1336 Mercer Street, Princeton, WV; City Hall, Welch, WV; Turnhole Road, Gary, WV; Ballengee Street, Hinton, WV; and Union, WV."

It is well settled that the description of the place to be searched is sufficient if it be "such that the officer with the search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. U.S.*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); *U.S. v. DePugh*, 452 F.2d 915, 920 (10th Cir.1971) *cert. denied* 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805 (1972); *U.S. v. Lockhart*, 512 F.Supp. 571, 573 (W.D.Okla.1981). *See also U.S. v. Palmer*, 667 F.2d 1118, 1120 (4th Cir.1981) *cert. denied*, — U.S. —, 104 S.Ct. 76, 78 L.Ed.2d 88 ("If a warrant specifies a place under the designation by which it is commonly known, though the exact description may not be correct, the warrant will be upheld.") The pleadings before the Court are devoid of even a hint of confusion concerning the correct premises to be searched. To the contrary, the officers executing the search warrant appeared to be able to easily locate the various offices listed in the search warrant, as well as persons with keys to the various offices who were willing to let the officers into the premises. Under these circumstances, the description of the premises to be searched was more than adequate to satisfy the applicable standard. *See U.S. v. Gomez*, 42 F.R.D. 347 (S.D.N.Y.1967) ("The standard for determining whether a search warrant complies with Constitutional requirements is one of practical accuracy rather than technical nicety.") [7]

3. *The Search Warrant Adequately Described the Property to be Seized.* In contesting the description of the property to be seized pursuant to the search warrant Movants assert that the warrant permitted the officers to conduct an improper, general exploratory search. The Court finds this argument to be totally meritless. The search warrant incorporated by reference the three subpoenas duces tecum describing the records to be seized. *See supra*, at p. 187. The description of the records therein are specific and limited in scope as to time and subject matter. The Court finds the description of the property in the search warrant to be sufficiently specific so as to place it without the category of a general warrant which the Supreme Court had occasion to describe in *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976):

"General warrants, of course, are prohibited by the Fourth Amendment. '[T]he problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings.... [The Fourth Amendment addresses the problem] by requiring a "particular description" of the things to be seized.' *Coolidge v. New Hampshire*, 403 U.S. 443, 463 [91 S.Ct. 2022, 2036, 29 L.Ed.2d 564] (1971). This requirement ' "makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." ' *Stanford v. Texas*, 379 U.S. 476, 485 [85 S.Ct. 506, 512, 13 L.Ed.2d 431] (1965) quoting *Marron v. U.S.*, 275 U.S. [192] at 196 [48 S.Ct. 74, 76, 72 L.Ed. 231]."

■■ After carefully considering the description of the property to be seized incorporated into the search warrant, the Court is of the opinion that the warrant did not

---

**6.** *See* Movants' memorandum of law at p. 18.

**7.** The two cases relied upon by Movants in challenging the sufficiency of the description of the property to be searched are both clearly inapposite to the facts of this case: *Tynan v. U.S.*, 297 F. 177, 179 (9th Cir.1924) *cert. denied* 266 U.S. 604, 45 S.Ct. 91, 69 L.Ed. 463 (1924) and *U.S. v. Hinton*, 219 F.2d 324 (7th Cir.1955) both involved searches of an entire building which was subdivided into several separate apartment units occupied by different tenants.

allow the executing officers unfettered discretion in deciding what documents to confiscate, but rather provided the officers with specific authorization as to what could be seized. *Cf., Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 325, 99 S.Ct. 2319, 2323, 60 L.Ed.2d 920 (1979) (search warrant held to be "reminiscent of the general warrant or writ of assistance" where the description of the property to be seized was left open-ended, allowing the executing officers to add items to the description as they were seized). The Court finds the description of the property to be seized to be within the "practical margin of flexibility" permitted by the Fourth Amendment. *See U.S. v. Torch,* 609 F.2d 1088, 1089–90 (4th Cir.1979) *cert. denied* 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1979). *See also, U.S. v. Ladd,* 704 F.2d 134, 136 (4th Cir.1983) (upholding the validity of a search warrant which described the property to be seized as items relating to "the smuggling, packing, distribution and use of controlled substances.")

■ 4. *The Search Warrant Does Allege That the Property to be Seized is Evidence of a Crime.* In their last ground challenging the issuance of the search warrant, Movants contend the warrant is defective because the affidavit did not allege that the evidence to be seized constituted evidence of the commission of a criminal offense. This assertion is frivolous and directly contradicted by the affidavit itself. Simply stated, reading the affidavit as a whole and giving it the common sense construction required when interpreting an affidavit,[8] it is quite apparent that the evidence to be seized would constitute evidence of the crime of obstruction of justice in violation of 18 U.S.C. § 1503.

B. EXECUTION AND RETURN OF THE SEARCH WARRANT. The Court will now turn to the Movants' arguments challenging the execution and return of the search warrant.

1. *The Search Warrant was Timely Executed.* The search warrant issued by Magistrate Hogg ordered that it be executed on or before the day of its issuance, August 12, 1983. Because it was not executed until the following day, August 13, 1983, Movants contend the search warrant was void when executed. The sole case relied upon by Movants in support of this argument is *Sgro v. U.S.,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). *Sgro* involved a search warrant issued under the National Prohibition Act, 27 U.S.C. § 39, which, by statute had to be executed within ten days of issuance. The warrant was not executed within ten days of issuance and was reissued 21 days later without a finding of probable cause. The Supreme Court held that the failure of the issuing judicial officer to make a renewed finding of probable cause for the search rendered the warrant invalid:

"The issue of a second warrant is essentially a new proceeding which must have adequate support. The fact that it is a second warrant gives the commissioner no privilege to dispense with the statutory conditions. These cannot be escaped by describing the action as a reissue. If the warrant is the old one, sought to be revived, the proceeding is a nullity, and if it is a new warrant, the commissioner must act accordingly. The statute in terms requires him before issuing the warrant to take proof of probable cause. This he must do by examining on oath the complainant and his witness and requiring their affidavits or depositions. The proof supplied must have appropriate relation to the application for the new warrant and must speak as of the time of the issue of that warrant. The commissioner has no authority to rely on affidavits which have sole relation to a different time and have not been brought down to date or supplemented so that they can be deemed to disclose grounds existing when the new warrant is issued. The new warrant must rest upon a proper finding and statement by the commissioner that probable cause then exists. That determination, as of that time, can-

---

**8.** *See supra* at p. 189.

not be left to mere inference or conjecture. The purpose of the statute would be thwarted if by the simple expedient of redating, without more, the time for the execution of a warrant could be extended."

287 U.S. at 211, 53 S.Ct. at 140.

■ *Sgro* is inapposite to the situation before the Court. *Rule* 41(c)(1) provides that the search warrant "shall command the officer to search, within a specified period of time not to exceed ten days," the place to be searched. By statute, then, the warrant could have authorized the search to be executed on or before August 22, 1984. In its memorandum of law in opposition to Defendant's motion to suppress, the Government states that the date was typed in on the search warrant by the United States Attorney's office and that, because of a typographical error, the date August 12, 1983, was typed in instead of the intended date of August 22, 1983. Further, inasmuch as the search was delayed for less than 24 hours because of the executing officer's desire to avoid property damage to the offices to be searched, the Court finds that the short delay in executing the search warrant did not invalidate the warrant and that nothing had occurred in the interim to obviate the Magistrate's finding of probable cause to search. *See e.g., U.S. v. Lemmons,* 527 F.2d 662 (6th Cir.1975) *cert. denied* 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976) (six day delay held to be reasonable); *U.S. v. Bedford,* 519 F.2d 650 (3d Cir.1975) *cert. denied* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976) (eight day delay held to be reasonable); *U.S. v. Wilson,* 491 F.2d 724 (6th Cir.1974) *cert. denied* 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 831 (1976) (six day delay held to be reasonable). *See also U.S. v. Twenty-two Thousand Two Hundred Eighty-seven Dollars, United States Currency,* 709 F.2d 442 (6th Cir.1983) (daytime search warrant executed shortly after the 10:00 p.m. deadline held not to require suppression of the evidence seized). Moreover, it is clear from the pleadings in this action that the executing officers acted in good faith reliance on the validity of the search warrant and, therefore, exclusion of the evidence seized is not required. *See Massachusetts v. Sheppard,* — U.S. —, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); *U.S. v. Leon,* — U.S. —, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

■ 2. *The Property Seized was Described in the Search Warrant and the Warrant was Properly Executed.* The Movants' objections to the search warrant relating to the date of its execution and the description of the property to be seized are discussed and rejected *supra* at pp. 191–192 and p. 192, respectively. The Court will not repeat that analysis in response to the identical challenges to the warrant made by Movants in contending the search warrant was an intrusion upon the property and personal rights of the Movants. The Movants' contention that the property seized was not that described in the search warrant is proved meritless by a comparison of the inventory of seized property with the description of the property in the subpoenas duces tecum incorporated into the search warrant.

■ 3. *The Officers Properly Returned the Search Warrant.* The Court need not discuss in detail the Movants' objections to the timeliness and content of the return of the search warrant. The Fourth Circuit has endorsed "the doctrine that ministerial violations of *Rule* 41(d) require suppression only if the defendant can demonstrate that he was prejudiced by the violation." *U.S. v. Wyder,* 674 F.2d 224, 226 (4th Cir.1982) *cert. denied sub nom Mallory v. U.S.,* 457 U.S. 1125, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982). It is clear to the Court that any technical violation relating to the return of the search warrant did not prejudice Movants in any way inasmuch as: (1) the Movants and their counsel were provided with an inventory of the material seized; (2) Movants and their counsel were shown a copy of the warrant before it was executed; (3) Movants and their counsel were present during much of the search; and (4) Movants and their counsel were given access to the seized property. Accordingly, the Court finds no merit

to Movants' challenge to the procedures used by the officers in returning the search warrant.

C. STANDING ISSUE. Because the Court has ruled on the merits of Movants' motion, the Court will not address the Government's contention that the Movants had no legitimate expectation of privacy concerning the seized documents and, therefore, no standing to bring the instant motion. *See Katz v. U.S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *U.S. v. Ladd*, 704 F.2d 134 (4th Cir.1983).

D. ORDER. For the reasons discussed above, the Court hereby denies Movants' motion for suppression and return of the property seized pursuant to the search warrant dated August 12, 1983.