UNITED STATES of America, Plaintiff,

v.

Clarence Matthew JONES, Defendant.

Crim. No. A:86–00058.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

July 17, 1986.

Mary S. Feinberg, Asst. U.S. Atty., Charleston, W.Va., for plaintiff.

David M. Finnerin, Parkersburg, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

The Defendant, Clarence Matthew Jones, has moved to suppress two groups of evidence. At a hearing on the motion, the Court, after considering testimony and the arguments of counsel, denied the motion as it respected the contents of a money bag. The Court took under advisement the second aspect of the motion: The validity of a search of the Defendant's business premises conducted on April 30, 1985. The Court now announces its decision.

### I. *Background*

The Defendant was indicted on April 15, 1986, on one count of operating an illegal gambling business and five counts of using a facility (a telephone) in interstate commerce to promote an unlawful activity (gambling). The indictment was the result of a relatively lengthy investigation into the Defendant's alleged gambling activities in Parkersburg, West Virginia. The investigation had its genesis in events occurring on the night of November 24, 1984. On that night the Defendant left his business establishment, known as Close Encounters, carrying a locked money bag which contained a sizable sum of money. Outside the establishment, he was accosted by two men who apparently surmised the value of the money bag's contents. A scuffle ensued; the Defendant was slightly injured by a gunshot and his assailants fled with the money bag.

The money bag, still locked, was recovered by Parkersburg City Police later that night. With the Defendant's permission, the bag was opened and its contents inventoried by a city police officer. The bag contained, *inter alia*, $2,594.25 in cash, $70.00 in personal checks, dozens of betting slips and the lower portion of several dozen parlay cards. The cash was eventually returned to the Defendant, but the betting paraphernalia was turned over to F.B.I. Special Agent Timothy G. Eley on February 22, 1985.[1] Thus began the federal portion of the investigation.

Apparently acting on the information obtained from the locked money bag, Agent Eley executed an affidavit and appeared before Magistrate Jerry D. Hogg in Charleston, West Virginia, on April 29, 1985, at 5:00 p.m. Magistrate Hogg issued a search warrant for the second floor of Close Encounters, located at 501½ Juliana Street, Parkersburg, West Virginia. Unfortunately, a mistake was made in filling out the warrant. Instead of counting forward ten days, or some lesser number of days, and noting that date as the outside time limit for conducting the search, the drafter of the warrant typed in the date on which the warrant was issued. Hence, the warrant, issued on April 29, 1985, directed the federal agents to conduct the search "On or before April 29, 1985 (not to exceed ten days)." Since the warrant was obtained at 5:00 p.m. on the 29th, and since it did not permit a night time search (one occurring after 10:00 p.m.), the agents had less than five hours in which to technically comply with the time limitation on the face of the warrant.

Agent Eley testified at the hearing on the motion to suppress that he did not notice the drafting error.[2] He further tes-

---

1. The Court's ruling on June 23, 1986, denied the Defendant's motion to suppress the evidence discovered in the locked money bag. The Court found that the search of the bag was done pursuant to an inventory, a well-established exception to the warrant requirement of the Fourth Amendment. Alternatively, the Defendant was deemed to have waived his Fourth Amendment rights by consenting to the initial search of the bag.

2. Agent Eley did not prepare the warrant itself. He was aided by an Assistant United States Attorney. A member of the United States Attorney's staff apparently prepared the warrant for the Magistrate's signature. Agent Eley did testify, however, that he had read the search warrant prior to executing it.

tified that due to the distance of Charleston from Parkersburg[3] and the time involved in gathering the personnel to make the raid, he intended to execute the search warrant on the following day, April 30. Consistent with this testimony, the search warrant was executed and served on April 30, 1985, beginning at 11:35 a.m. Because of the facial defect as to time, the Defendant has moved to suppress all evidence recovered in the April 30, 1985, search, together with all information thereafter obtained as a fruit or product of the search.

## II. *Discussion*

Strangely enough, this case is not the first time the instant issue has come before this Court.[4] *See In Re Motion to Quash Grand Jury Subpoenas*, 593 F.Supp. 184 (S.D.W.Va.1984). In *Grand Jury Subpoenas*, the Court considered a motion to suppress under almost exactly the same factual circumstances as exist here. The search warrant prepared by the United States Attorney's Office contained a typographical error. It was issued on August 12, but instead of making it returnable on August 22, ten days hence, the date of issuance, August 12, was placed on the warrant. The warrant was then executed on August 13. So, the warrant when executed was facially invalid.

The Court denied the motion to suppress in *Grand Jury Subpoenas* on three grounds. First, the Court found that the officers could have conducted the search on the 12th, but delayed it "for less than twenty-four hours because of the executing officer's desire to avoid property damage to the offices to be searched." *Id.* at 192.[5] Second, the Court held that nothing had occurred in the interim between the Magistrate's review and the execution of the warrant to obviate the Magistrate's finding of probable cause to search. Third, the

Court found that the executing officers had acted in good faith reliance on the validity of the search warrant. Therefore, the Court did not believe that exclusion was proper. The repetition of this fundamental error now forces the Court to consider the precedential value of its earlier decision.

The Court begins by noting that *Rule 41(c)(1)* of the Federal Rules of Criminal Procedure requires that a warrant "shall command the officer to search, *within a specified period of time not to exceed ten days*, the person or place named for the property or person specified." (Emphasis added). It is quite apparent, in light of the clear language of the *Rule* that the search warrant at issue here was not invalid when it was issued. The warrant was invalid, however, when it was executed. More importantly, it was facially invalid. In other words, an officer, or anyone for that matter, could have examined the face of the warrant and have discovered that it did not provide for a lawful search. Of course, a finding that a search warrant is invalid, facially or otherwise, is only the first step in the analysis. The second inquiry is whether the evidence obtained by the invalid search warrant should be excluded.

Much has been made of the recent United States Supreme Court decision in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.E.2d 677 (1984). That decision saw the long-expected good faith exception to the exclusionary rule come to fruition. The *Leon* Court dealt with the good faith reliance of a police officer on a technically sufficient search warrant supported by a neutral judicial officer's finding of probable cause. The Court determined that in such a situation the purpose of the exclusionary rule was not furthered by exclusion.

A crucial ingredient of the Supreme

---

**3.** The traveling time between the two cities is approximately one and a half hours by automobile.

**4.** The Court's research reveals no other published opinion which discusses this peculiar situation.

**5.** This Court obviously believed the decision of the officers to refrain from forcibly entering the establishment to be reasonable. Such a rationale for delaying the search in this case is not argued by the United States.

Court's good faith exception is objectivity.[6] That is, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable...." *Id.* at 923, 104 S.Ct. at 3421. The Court went on to declare that "depending on the circumstances of the particular case, a warrant may be so facially deficient ... that the executing officers cannot reasonably presume it to be valid." *Id.*

Although this Court believes that Agent Eley was *subjectively* acting in good faith, such is not sufficient to bring this case within the *Leon* good faith exception to the exclusionary rule. To repeat, the officer must *objectively* act in good faith. To execute a search warrant which facially denotes untimeliness is to fail the objective standard. While exclusion of evidence is often based upon instances of bad faith by police officers, the Court also believes it can be fruitful to utilize the rule in deterring recklessness or negligence. Certainly, the rights of the citizenry can be trammeled by careless police action as well as by willful misconduct.

The Ninth Circuit has held that a violation of *Rule* 41 will result in automatic suppression only if it is a fundamental violation. Otherwise, it holds, a nonfundamental violation mandates suppression only where: "(1) There was prejudice in that the search might not have occurred or would not have been so abrasive if the Rule had been followed; or (2) there is evidence of intentional and deliberate disregard of a provision of the rule." *United States v. Ritter,* 752 F.2d 435, 441 (9th Cir.1985). The Second Circuit follows a similar approach. *United States v. Burke,* 517 F.2d 377 (2d Cir.1975). The Fourth Circuit has declined to adopt a view on the "more sweeping rules" of those circuits. *United States v. Wyder,* 674 F.2d 224 (4th Cir.),

cert. denied sub nom, *Mallory v. United States,* 457 U.S. 1125, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982). Under the facts in *Wyder,* the court had only to hold that ministerial violations of *Rule* 41(d) requires suppression of evidence if the defendant can demonstrate that he was prejudiced by the violation. The Court believes that the decision to suppress in the case at bar is consistent with the above authorities in that the Court believes the error here to be of a fundamental nature. Moreover, the two instances of facially invalid warrants being executed, taken together, make out such a case of institutional disregard for *Rule* 41(c)'s specific directives as to justify punitive action by the Court.

### III. *Conclusion*

The Court is not unmindful of the ramifications of the decision announced today. Such a decision is not an easy one to make. Nevertheless, without meaning to impugn those involved, the Court feels compelled to ensure that the Fourth Amendment and its regulatory counterpart, *Rule* 41, are faithfully observed and obeyed. Any detriment to the general juridical policy of having all relevant evidence available is, in this instance, outweighed by the greater benefit of guaranteeing compliance with those straightforward guidelines which were designed to protect all citizens from unreasonable exercise of the state's police power.

Accordingly, the Court grants the motion of the Defendant and ORDERS that all evidence obtained in the April 30, 1985, search of Close Encounters, together with the fruit and product of such search, is to be excluded from introduction into evidence at trial of this action.

---

**6.** An objective standard of conduct, as with other areas of the law, is not a novel concept with regard to law enforcement.

"Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But

the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."

*Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) (discussing standard for determining probable cause).