**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jeffrey Todd GERBER, Defendant–
Appellee.**

**No. 92–2182.**

United States Court of Appeals,
Eleventh Circuit.

July 12, 1993.

Teri Donaldson, Karla Spaulding, Tamra Phipps and Edmund Searby, Asst. U.S. Attys., Tampa, FL, for plaintiff-appellant.

Deborah Jordan and S. Craig Alldredge, Asst. Federal Public Defenders, Tampa, FL, for defendant-appellee.

Before KRAVITCH and BIRCH, Circuit Judges, and CLARK, Senior Circuit Judge.

BIRCH, Circuit Judge:

In this interlocutory appeal, we address the constitutionality of a search, which was not executed completely before expiration of

the authorizing warrant. The district court suppressed evidence obtained both from the initial search and the continuation of that search. Following our review of the record in this case, we REVERSE and REMAND.

## I. BACKGROUND

On August 27, 1991, a white male using a nine millimeter Glock pistol robbed the Glendale Federal Bank in Tampa, Florida. The robber wore a homemade black ski mask and clear plastic gloves. He jumped over the teller counter and took the contents of several cash drawers, amounting to approximately $3,010. The robber placed the money in a canvas coin bag. Two dye packs therein exploded shortly after the robber left the bank. A witness observed the robber driving from the bank and provided a description of his 1975 Dodge automobile.

In September, 1991, the roommate of defendant-appellee Jeffrey Todd Gerber telephoned the Federal Bureau of Investigation (FBI). The roommate stated that Gerber had admitted to him that he committed the robbery and had disclosed facts that would be known to the robber alone. Additionally, Gerber had shown his roommate the dye-stained shower curtain in their bathroom, resulting from Gerber's attempt to wash the dye from the money. After corroborating this information from the roommate, the government obtained a warrant for Gerber's arrest and a search warrant, containing a particularized description of the car based on the eyewitness's account. Both warrants were issued in the late afternoon on September 12, 1991. Because the FBI intended to arrest Gerber that evening and to search the car the next day, the search warrant was drafted to expire on Friday, September 13, 1991. Pursuant to Fed.R.Crim.P. 41(c), the government could have requested ten days to search the car.

On the evening of September 12, 1991, Gerber parked his car in a technical school parking lot and attended class. The school parking lot was unsecured and connected to a public road. Gerber was called from his class and arrested. The agents did not arrest Gerber while he was in his car because they had probable cause to believe that he had the firearm used in the robbery inside the car. The automobile, which was fully operational and not registered to Gerber, was driven to the FBI impound following Gerber's arrest.

The agents impounded the car because they intended to search it under the search warrant and because the car was evidence of the bank robbery based on the eyewitness's identification.[1] During the search of the car interior on September 13, 1991, the agents seized dye stained towels, two gun cases and a coin bag matching the description of the bag used in the robbery. The agents also removed front-seat upholstery stained with the same red dye used in the bank dye packs.

The agents, however, could not locate the hood release lever to enable them to search under the hood. Rather than damaging the car, the agents decided to wait until the next business day, the following Monday, to obtain the assistance of an automobile mechanic in opening the hood. On Monday, September 16, 1991, the agents resumed their search of the vehicle with the aid of a mechanic. The agents were not aware that the search warrant had expired the previous Friday.

The automobile mechanic raised the hood, revealing key pieces of evidence: a loaded nine millimeter Glock pistol, clear plastic gloves, a homemade black ski mask, and an ammunition box with Gerber's fingerprints on it. The pistol and gloves were stained with the red bank dye. The car was released from FBI impoundment to Gerber's stepfather, the registered owner of the vehicle, on September 16, 1991.

Gerber was indicted by a grand jury and charged with armed bank robbery, using a firearm during the commission of a violent felony, and possessing a firearm while being convicted as a felon, in violation of 18 U.S.C. §§ 2113(a) & (d), 924(c), and 922(g)(1), respectively. Represented by a federal public defender, Gerber filed a motion to suppress the evidence seized from the car, including "a bag with $97.00 in quarters, two pistol bags, part of a seat cover, gloves, a mask, a 9mm

1. The FBI routinely conducts thorough inventory searches of all impounded vehicles.

Glock pistol, a box of 9mm ammunition, towels, United States currency, and clothing." R1–14–1. The government opposed the suppression motion. Gerber and the government filed a conditional plea agreement wherein Gerber reserved his right to appeal denial of his suppression motion and to withdraw his guilty plea if his suppression motion was granted.

Without an evidentiary hearing, the district judge granted the suppression motion, which included evidence obtained on September 13, 1991, during the duration of the search warrant, as well as the evidence seized on September 16, 1991. In granting Gerber's suppression motion, the district court stated: "There is no suggestion here that the warrant was improperly issued. The government was simply careless in executing the warrant several days late, and the exclusionary rule was fashioned to deter such mistakes." R1.–32–3.

The government filed a motion for reconsideration and for an evidentiary hearing, a notice of supplemental authority in support of the motion for reconsideration, and an alternative motion for leave to file an affidavit and memorandum of law in the absence of an evidentiary hearing to allow the government to present its evidence in affidavit form. The district court denied these motions. The government then filed this appeal. At oral argument, Gerber's counsel conceded that the evidence obtained from the interior of the car on September 13, 1991, while the search warrant was in effect, was suppressed erroneously. Accordingly, we address only whether the evidence obtained from under the hood of the vehicle on September 16, 1991, was suppressed properly.

## II. DISCUSSION

■ "The Fourth Amendment by its terms prohibits 'unreasonable' searches and seizures." *New York v. Class*, 475 U.S. 106, 116, 106 S.Ct. 960, 967, 89 L.Ed.2d 81 (1986). "The relevant test is not the reasonableness

of the opportunity to procure a warrant, but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts." *Coolidge v. New Hampshire*, 403 U.S. 443, 509–10, 91 S.Ct. 2022, 2060, 29 L.Ed.2d 564 (1971) (Black, J., concurring and dissenting). "[T]he Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution." *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). The bank personnels' recounting of Gerber's attire, weapon and money bags taken, the eyewitness's description of the car that Gerber was driving, and the roommate's account of information concerning the robbery provided sufficient probable cause for the search warrant for the car.

" 'A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search.' " [2] *United States v. Johns*, 469 U.S. 478, 483, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985) (quoting *United States v. Ross*, 456 U.S. 798, 821, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982)). Gerber has conceded that the evidence obtained from the interior of the car on Friday, September 13 was seized legitimately pursuant to the search warrant. He has not contended that the additionally incriminating evidence under the hood could not have been seized on the same day. The agents attempted to raise the hood, but were unable to locate the lever with which to open the hood. To avoid damaging the car, the agents, unaware of the expiration of the search warrant on September 13, elected to wait until the following business day, Monday, September 16, to open the hood with the assistance of an automobile mechanic.

■ Gerber's sole contention on appeal is that the pistol, gloves, mask, and ammunition box found under the hood on Monday, September 16 should have been suppressed be-

---

**2.** "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions ... between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle,

must give way to the interest in the prompt and efficient completion of the task at hand." *United States v. Ross*, 456 U.S. 798, 821, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982).

cause the search warrant for the car had expired. He argues that the FBI agents should have obtained another search warrant and that their failure to do so requires the suppression of this additional evidence. Not only was there ample probable cause for the car search on the preceding Friday, but also probable cause was enhanced on that unlucky Friday the thirteenth for Gerber by the discovery of the red-dye-stained towels and upholstery of the front seat of the car as well as the gun cases and the coin bag. In a very real sense, he was caught "red handed." We view the opening of the hood on the following Monday as the *continuation* of the search for which the agents had a valid warrant on the preceding Friday. If they had been able to raise the hood in the normal manner or by force on Friday, then Gerber could not complain about the evidence recovered and this case would not be before us.

The agents did not delay the search deliberately or in bad faith. To the contrary, they did not want to damage the car by forcing the hood open, and they were unaware that the warrant had expired. Without question, they could have obtained an additional warrant based on enhanced probable cause for the renewed search had they been aware that the previous warrant had expired. "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.'" *Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967) (quoting *United States v. Rabinowitz,* 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950)).

We have no difficulty concluding that the continued search on Monday was reasonable and well founded on probable cause. Having found some, but not all of the evidence incriminating Gerber in the bank robbery in their search of the rest of the car, the agents *reasonably* decided that they should look for additional evidence under the hood.[3] *Cf. United States v. Miranda,* 426 F.2d 283, 284 (9th Cir.1970) (per curiam) (Marihuana found under the hood of a car was admissible although it was "inconceivable" that the border patrolman was searching for illegal aliens, when there were only inches between the radiator and the top of the hood.). Without knowledge that the search warrant expired on Friday, the agents *reasonably* decided to wait until the following Monday, when they could acquire the assistance of an automobile mechanic in opening the hood rather than damage the car, a *reasonable* rationale. Clearly, a more intrusive alternative existed: they legitimately could have pried the hood open and damaged the car on Friday to complete the search. The agents, however, decided not to harm the car and to wait for the assistance of a mechanic because they believed in good faith that the warrant lasted for the typical ten days.

■ The Fourth Amendment does not specify that search warrants contain expiration dates. While the amendment requires an "[o]ath or affirmation ... particularly describing *the place* to be searched, and *the persons or things* to be seized," it contains no requirements about *when* the search or seizure is to occur or the *duration.* U.S. Const. amend. IV (emphasis added). In contrast, Federal Rule of Criminal Procedure 41(c) provides that a duly issued search warrant shall be executed "within a specified period of time not to exceed 10 days."

---

**3.** The government has contended that the car search on Monday, September 16, 1991, was a valid inventory search. Because the agents clearly were *continuing* their search for evidence of the bank robbery based on enhanced probable cause from their discovery of incriminating evidence on the preceding Friday, we do not consider the Monday search to be an inventory search. *See Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."); *Colorado v. Bertine,* 479 U.S. 367, 376, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987) (Be-

cause inventory searches are conducted "only pursuant to standardized police procedures," they "will not be used as a purposeful and general means of discovering evidence of crime." (Blackmun, J., concurring)); *United States v. Bosby,* 675 F.2d 1174, 1179 (11th Cir.1982) ("Inventory searches must, however, 'be limited to effectuation of the recognized purposes for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible.'" (quoting *United States v. Prescott,* 599 F.2d 103, 105 (5th Cir.1979)).

Federal courts that have addressed the precise issue presented in this case have concluded that completing a search shortly after the expiration of a search warrant does not rise to the level of a constitutional violation and cannot be the basis for suppressing evidence seized so long as probable cause continues to exist, and the government does not act in bad faith. *See, e.g., United States v. Twenty–Two Thousand, Two Hundred Eighty Seven Dollars ($22,287.00) United States Currency,* 709 F.2d 442 (6th Cir.1983); *In re Motion to Quash Grand Jury Subpoenas,* 593 F.Supp. 184 (S.D.W.Va.1984), *appeal dismissed sub nom.,* 766 F.2d 870 (4th Cir.1985); *United States v. Huslage,* 480 F.Supp. 870 (W.D.Pa.1979).

In *Twenty–Two Thousand, Two Hundred Eighty Seven Dollars,* the court concluded that money seized from a home as proceeds from narcotics transactions gave probable cause for the search warrant. The money was not suppressed, although a daytime search occurred after the 10:00 P.M. expiration of the warrant the previous night. The Sixth Circuit determined that the exclusionary rule was not applicable because the infraction was *de minimis,* a reasonable basis for the search existed, the search would not have been less abrasive if it had been executed before 10:00 P.M., and the record did not evidence "an intentional or deliberate disregard of the requirements of Rule 41(c)(1)." *Twenty–Two Thousand, Two Hundred Eighty Seven Dollars,* 709 F.2d at 449.

In *In re Motion to Quash Grand Jury Subpoenas* concerned the court's decision not to suppress evidence seized from four businesses after the expiration of a valid search warrant that terminated the day of its issuance. The agents attempted to execute the warrant on the day of its effectiveness, but could not gain entrance to the premises without causing damage because no one was present to admit them. Noting that the agents were not aware that the warrant expired the same day, the court determined that "the short delay in executing the search warrant did not invalidate the warrant ... [because] nothing had occurred in the interim to obviate the Magistrate's finding of probable cause to search" and the "officers acted in good faith reliance on the validity of the search warrant," which precluded "exclusion of the evidence seized." *In re Motion to Quash Grand Jury Subpoenas,* 593 F.Supp. at 192.

*Huslage* is particularly analogous to this case. A fifteen-year-old minor, who was kidnapped and sexually abused, described the Volvo used in her abduction and a pistol that was in the automobile. Her information provided the probable cause supporting the warrant to search the vehicle. Although the car was searched twice in the early morning hours with flashlights, no evidence was discovered. By its terms, the warrant expired by 5:00 A.M. Aided by daylight, another search was conducted at approximately 10:00 A.M., and a Beretta pistol secreted behind a loose piece of upholstery was discovered. The court was not persuaded by the defense argument that the seizure of the pistol violated the Fourth Amendment because the warrant had expired and previous searches had not revealed the incriminating evidence. Finding the scope of the searches identical and probable cause still extant, the court concluded that the renewed search for the weapon in daylight was reasonable and "merely a *continuation* of the initial intrusion" and that "the expiration time of the search warrant does not create a problem." *Huslage,* 480 F.Supp. at 875 (emphasis added).

This court has adopted the Ninth Circuit standard for analyzing alleged violations of Rule 41 relating to search warrants:

> "[U]nless *a clear constitutional violation occurs,* noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that *the search might not have occurred or would not have been so abrasive if the rule had been followed,* or (2) there is *evidence of intentional and deliberate disregard of a provision in the Rule.*

*United States v. Loyd,* 721 F.2d 331, 333 (11th Cir.1983) (per curiam) (quoting *United States v. Stefanson,* 648 F.2d 1231, 1235 (9th Cir.1981) (citations omitted)) (emphasis added). In *Loyd,* suppression was denied because the violation of Rule 41 did not affect the occurrence or abrasiveness of the search, and there was "no evidence to indicate bad faith or an intentional disregard of the rule."

*Loyd,* 721 F.2d at 333; *cf. United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (holding that the exclusionary rule is inappropriate when agents executing a search warrant acted in good faith reliance on the validity of the warrant). This case is stronger than *Loyd* because not only is it undisputed that there was no intentional disregard of Rule 41, but also, had the search occurred under the unquestionably valid search warrant on September 13, 1991, it would have been much more abrasive because the hood would have to have been pried open.

■ The exclusionary rule principally serves to deter unlawful government conduct. The "prime purpose" of the exclusionary rule "is to deter future unlawful police conduct." *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). "[T]he rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* at 348, 94 S.Ct. at 620. Thus, the rule must be applied in light of its deterrent purpose, and courts should restrict the application of the rule "to those areas where its remedial objectives are thought most efficaciously served." *Id.*

*United States v. Lynch,* 934 F.2d 1226, 1234 (11th Cir.1991) (footnote omitted), *cert. denied,* — U.S. —, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992).

On the facts of this case, we conclude that the additional incriminating evidence located under the hood when the search resumed on September 16, 1991, should not have been suppressed. A proper warrant was acquired for search of the car. The warrant was drafted to expire on September 13, 1991, because that was all the time that appeared necessary to search the car. The FBI agents encountered an unexpected obstacle in their inability to raise the hood. When they clearly could have pried open the hood, out of concern for property damage, they decided to interrupt the search until a mechanic could assist them because they were unaware that the warrant expired on September 13. Their actions were *reasonable.*

The government should not be precluded from presenting the incriminating evidence found under the hood because of an inadvertent, rather than intentional, failure to conform to Rule 41. When probable cause is as apparent and overwhelming as it was in this case, we would impede law enforcement and judicial efficiency if we suppressed this evidence, which resulted from the continuation or resumption of a legitimate search.[4] Because the government took the time to obtain a search warrant and showed unusual consideration for the property involved, the adage "no good deed shall go unpunished" seems particularly appropriate for this case.

## III. CONCLUSION

Since Gerber has conceded that evidence obtained from the car interior pursuant to a valid warrant on September 13, 1991, should not have been suppressed, the only issue in this interlocutory appeal is whether the incriminating evidence acquired from under the car hood on September 16, 1991, should be suppressed. We conclude that the September 16 search was a reasonable continuation of the valid search commenced on September 13, and that the evidence obtained from both of these searches should not have been suppressed. Accordingly, the district court's order granting Gerber's motion to suppress this evidence is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.

---

4. We want to be careful not to be misunderstood to be providing a precedent for careless attention to the acquisition of warrants, including their duration. The government should use caution to follow the dictates of Rule 41 explicitly so that appeals such as this based on failure to adhere to the rule will not occur in the future. Clearly, drafting the warrant in this case for the ten days permitted by Rule 41 would have averted this appeal. Unexpected occurrences, such as the inability to open a car hood, should be anticipated. Nevertheless, the facts of this case convince us that this inadvertent, technical violation of Rule 41 should not preclude key incriminating evidence for which a valid warrant based on abundant probable cause was obtained. We emphasize that this case is narrowly restricted to its obvious facts, and that each case must be examined on its facts.